## BROOKS et al. v. SACKS.

### (Circuit Court of Appeals, First Circuit. June 10, 1897.)

### No. 192.

1. **PATENTS—PRIORITY OF INVENTION—EVIDENCE.**

    Where, in an infringement suit, a party attempts to carry back his invention so as to antedate an anticipating patent issued upon a prior application, the burden is upon him to prove priority to the satisfaction of the court, and by evidence which shall strongly outweigh that of the other party, if not beyond a reasonable doubt.

2. **SAME—UNSUPPORTED RECOLLECTIONS OF WITNESSES.**

    Unsupported recollections of witnesses as to facts and dates fully six years prior to giving testimony are insufficient to establish priority of invention over an earlier patent, especially where such facts are of a kindred character to other facts, occurring at or near the same time with which they might easily be confused.

3. **SAME—ANTICIPATION.**

    The Sacks and Richmond patent, No. 443,199, for an improvement in boot or shoe lasts, was anticipated by the Dusenbery patent, No. 430,732, for an improvement in pegging jacks.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by Louis Sacks against George Brooks, George K. Brooks, and Gardner C. Brooks, trading as Brooks & Co., for the alleged infringement of letters patent No. 443,199, issued December 23, 1890, to Louis Sacks and Henry Richmond for an alleged improvement in boot or shoe lasts. The circuit court entered a decree for an injunction and an account, and the defendants have appealed.

Benjamin F. Rex, for appellants.
William P. Preble, Jr., for appellee.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. There is only one claim in this patent, and its pith is that the same last is made capable of being placed and held in a horizontal position or in an oblique one, at the option of the user, merely by reversing it. The essence of the device is a standard with a tenon at the upper end, one side of which tenon runs in a vertical line and the other side in an oblique line, and a last with a socket in it, which the tenon fits exactly. When the last is fitted to the tenon in one position, it lies horizontally, or substantially so, and, when placed in the reverse position on the tenon, it lies obliquely; and in each case, on account of the simplicity of construction, it is held firmly. The purpose sought by this reversibility is not set out in the patent, and is differently stated by the counsel on either side, but its advantages are obvious. Previous to this device and Dusenbery's device, to which we will hereafter especially refer, its purpose was accomplished by using two standards or two lasts. Numerous patents are proven for the purpose of showing anticipation; but, aside from Dusenbery's, the purpose and principle of the operation of each of them were so substantially different that we need not refer to them in detail. The principle of operation of the device in issue results from the application of a certain geometrical form, and is perfectly apparent to any geometrician; but whether or not, prior to the two patents to which we shall limit our discussion (that of the complainant below and that of Dusenbery), the principle had been applied in the arts to such an extent as to render unpatentable its application to any particular art, is not shown by the record, and cannot be determined by us as a matter of common knowledge; and we are therefore brought to the conclusion that either the patent sued on, or the other patent to which we will especially refer, was the first in which the principle in question was adapted to this art, and that its adaptation was not so clearly lacking in invention as to overcome the presumption arising from the issuing of the patent.

On the mere question of infringement there appears to be no difficulty. The essential question is that of anticipation by Dusenbery. The complainant's application was filed March 21, 1890, and his patent issued December 23, 1890. Dusenbery obtained a patent for a pegging jack, issued June 24, 1890, on an application filed

October 12, 1889. This patent shows the use of precisely the same principle as the complainant's device, and for the same purpose. Instead of using a tenon and a mortise, Dusenbery used a V-shaped notch, or, as he calls it, "a pair of fingers," each of which had the vertical and oblique lines, fitting into corresponding recesses on the opposite sides of the last. Of course, the mechanical changes involved in the use of a tenon and a socket in lieu of the double tenon and the double mortise, or vice versa, cover no statutory invention. It is true that under well-settled rules, inasmuch as the two patents were pending in the patent office at the same time, and both of them were granted, there is a prima facie presumption that each was properly granted. Boyd v. Tool Co., 158 U. S. 260, 15 Sup. Ct. 837. Nevertheless, it is clear to us that both patents are for the same thing, so far as any inventive quality is concerned, and that only one of them can stand. Therefore we are brought to the question of priority as between the complainant below and Dusenbery.

It will be noticed that Dusenbery's application was first filed; so that it is settled law that the burden was thrown on the complainant below to prove priority in behalf of his patent to the satisfaction of the court, and by evidence which shall strongly outweigh that of the respondents below, if not beyond a reasonable doubt. Manufacturing Co. v. Sprague, 123 U. S. 249, 264, 8 Sup. Ct. 122; Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 492, 11 Sup. Ct. 846; Walk. Pat. (3d Ed.) 70. The inherent dangers of oral proofs in this class of cases are explained in The Barbed-Wire Patent, 143 U. S. 275, 284, 285, 12 Sup. Ct. 443, 450, and in Deering v. Harvester Works, 155 U. S. 286, 300, 301, 15 Sup. Ct. 118. On an issue made directly between the two patents under section 4918 of the Revised Statutes, or otherwise, the complainant below would be required to prove earlier invention in his behalf beyond reasonable doubt. Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772. And, as shown by the cases cited, the same would be the fact if he should be sued for infringement by the holder of the Dusenbery patent. It is inconvenient, and tends to the doing of injustice and the possibility of imposing double liability, to have different rules as to the practical amount of proof required on the same issue because it happens to be presented as between different parties. It is admitted that Dusenbery's invention was perfected as early as April 25, 1889. Therefore it rests on the complainant below to prove invention prior to the last-named date. Mr. Cox, who was the solicitor who obtained the complainant's patent, testified that he first saw this invention in December, 1888, and that some time about six months after this he investigated the state of the art at Washington, and subsequently secured the patent. He fails, however, to support this date by any collateral facts, unless by the matter of preparing the illustration to which we will refer. Cox had an interest in a designing and engraving business, and he testified that the complainant's device was brought to him for the purpose of making illustrations of it. He produced a bill, under

date of January 3, 1889, which he said covered woodcuts of the standard afterwards patented. What the woodcuts were, the bill does not show; neither is any woodcut produced, nor any illustration printed from it. Not only did Mr. Cox fail to produce any woodcut or any illustration, but the complainant also failed to do it. Indeed, the complainant did not even identify the entries in the bill. Thus, the matter was left to stand entirely on the unsupported recollection of Mr. Cox as to what the illustrations were. It is true that Mr. Cox's account is so continuous from the time when he first says he saw the device, that, as he had an interest in the matter from that time, his testimony would be very convincing, provided there was anything in the record by which it could be ascertained from any collateral events that he had not confused the date when he first saw it, or had not confused it with some other matter. The record shows another bill from him of "a lot of cuts" made by him, and delivered on March 20, 1890, the day before the date of complainant's application, and of "two cuts of shoe rests" delivered on April 21, 1890. These may well have included the device in controversy. Moreover, it appears that an engraving of the patented device was published by the patentees in 1890, "some time prior to the 23d day of December, 1890." In view of the fact that there are no other collateral events to fix the date, and the further fact that neither of the bills produced by Cox identifies the work done, it is not improbable that his attention was first called to this device in connection with the preparation of the engraving for the publication in 1890 in lieu of the earlier date; and, as the foundation on which his entire statement is built rests on this work of engraving, it follows that there is too much uncertainty at the very beginning to make it such that the court can accept it as sufficient for the purposes of an issue of priority. In our opinion, the evidence of all the other witnesses for the complainant below on this point has the same infirmities as that of Cox, but in a greater degree; so that the whole case, in this respect, depends on the unsupported recollections of witnesses as to facts and dates fully six years prior to giving testimony, and facts, moreover, of a kindred character to other facts occurring at or near the same time, with which they might be confused. Not only is this important as bearing on the weight of their testimony, but, under the circumstances of this case, the fact that the testimony is thus unsupported is an affirmative one against the complainant below of very great importance. He was challenged to produce any book showing sales of lasts prior to 1890, or any engraving such as was described by Cox. This he was unable to do, although Cox testified that, in the summer before the patent was applied for (that is, in the summer of 1889), Mr. Sacks told him "that the last was selling; that it was going to be a great thing, he thought"; and another witness for the complainant below testified that, to the best of his recollection, the standard in issue was put on the market extensively about the beginning of 1889. The complainant admitted in his evidence that he had no sample of any patterns of a last or

standard made according to the testimony of the witnesses to which we have referred, nor any sample of any such last made in 1888 or in 1889, nor any drawing or illustration of the period in dispute. He said, in a general way, that these things were all destroyed in the ordinary course of business. But, if they were produced to the extent maintained by the complainant, in accordance with the testimony of his witnesses to which we have referred, it would be extremely improbable that none of them remained. It seems very extraordinary that, if the dates in this matter were as claimed by the complainant and testified to by Cox, no entry on any book of account, no pattern, no sample, no purchaser, nor any bill of articles sold to any purchaser, was produced by the complainant in support thereof. It is incredible that the destruction as to which the complainant assumed to testify could have been of so wholesale a character, and could have reached out in so many directions, as to have covered all these.

On the whole, we must apply to this case the practical safeguards against the frequently mistaken memory of witnesses as to events of this character long since happening, which the courts are always insisting on with reference to the issue of anticipation. Doing this, it seems plain that the complainant below has come far short of proving his prior right as satisfactorily as required by the authorities and by the reason of the case. Indeed, in view of the absolute lack of illustrations, book entries, purchasers, bills, patterns, or castings of the early date in dispute, we are safe in saying that the preponderance of probabilities is against him. The decree of the circuit court is reversed, and the case is remanded to that court, with directions to dismiss the bill, with the costs both of this court and of the circuit court for the defendants below.