PENTUCKET VARIABLE STITCHING SEWING-MACH. CO. v. JONES
SPECIAL MACH. CO.

(Circuit Court, D. Maine.   January 24, 1899.)

No. 434.

1. PATENTS—VALIDITY AND INFRINGEMENT—SEWING MACHINES.
   Claims 4 and 6 of the Woodward patent, No. 354,499, for improvement in sewing machines, construed, and *held* valid and infringed.

2. SAME—DOUBLE USE.
   Heap v. Tremont & S. Mills, 27 C. C. A. 316, 82 Fed. 449, 453, 456, applied with reference to a new or double use.

3. SAME—EVIDENCE—PRESUMPTIONS.
   Brooks v. Sacks, 26 C. C. A. 456, 81 Fed. 403, 405, applied as to the nature of evidence required to overcome the presumption that the patentee is the original inventor.

This was a suit in equity by the Pentucket Variable Stitching Sewing-Machine Company against the Jones Special Machine Company for alleged infringement of patent No. 354,499, issued December 14, 1886, to Erastus Woodward, for a sewing machine.   The patent contains eight claims, of which, however, only 4 and 6 are here involved. These claims read as follows:

"(4) In a sewing machine of the class described, having a universally movable work feeder, the combination, with the needle, shuttle, automatic work feeder, and a tension device adapted to produce a constant tension on the thread, of automatic thread holding and releasing devices, substantially as described, whereby the needle thread is held while the shuttle is entering the needle loop, and released while the work is being moved by the work feeder, as set forth."   "(6) The combination of the needle, the shuttle, the work feeder, an automatic thread grasping and releasing device, and a tension device, all arranged and operating substantially as and for the purpose specified."

William Quinby, for complainant.
Clarke, Raymond & Coale, for defendant.

PUTNAM, Circuit Judge.   The letters patent at issue in this case contain eight claims, relating to various improvements in sewing machines, of which only one improvement is involved here.   Whether this particular improvement occupies relatively a leading position among those covered by all the claims of the patent, or only an incidental one, the record does not explain to us.   The difficulty of analyzing the case, arising from this omission, is a common one, wherever one claim out of a number is brought forward for the consideration of the court.   Under such circumstances, it becomes necessary to weigh with extreme care the propositions of counsel and the evidence of the experts, in order to make sure that they do not concern more properly the entire subject-matter of the patent than the particular portion in question.   In the present instance this difficulty is increased by the fact that the letters patent at issue, so far as the case before us is concerned, cover merely an improvement on a prior patent to the same patentee.

The subject-matter of the two patents is stated in each of them as follows:

"This invention has for its object to provide a sewing machine capable of forming elongated stitches on the surface of material to be ornamented, and of arranging said stitches in a variety of ornamental forms."

Only two claims are brought to our attention,—4 and 6. They are built up on what was substantially the pith of the invention of the earlier patent to which we have referred,. namely, a universally movable work feeder, by virtue of which the machine was made capable of .elongated stitches in a variety of ornamental forms. The combination in issue includes with this work-feeder the needle, the shuttle, and a device adapted to produce a constant tension on the thread. These are all old elements. The alleged new element consists of "automatic thread holding and releasing devices," "whereby," as claim 4 says, "the needle thread is held while the shuttle is entering the needle loop, and released while the work is being moved by the work feeder." With these appear the words "substantially described," and "as set forth." Claim 6, while changing the nomenclature in some respects, is, for all the purposes of this case, the same as claim 4, omitting the words, "whereby the needle thread is held while the shuttle is entering the needle loop, and released while the work is being moved by the work feeder." In our view, for the purposes of this case, the use or omission of these words is not of importance, and therefore we treat the two claims hand in hand. We will refer to this again when we come to the question of infringement.

There is no question, on the record, that the element of the automatic thread holding and releasing device is all there is in the claims in issue to distinguish them from the prior patent. But with reference to the doctrine of equivalents, as applied to the claims, the parties are at issue. It is maintained on the part of the defendant that automatic thread holding and releasing devices, with functions as shown by this patent, were known to the prior art, and that, therefore, the claims must, at the best, be limited to details of construction. On the other hand, the complainant cannot well maintain that kindred devices were not known in the prior art, but it denies that they were ever known in combination with a "universally movable work feeder," or ever performed the functions which they perform in the complainant's machine, or were adapted to perform them. That they were never used in combination with a "universally movable work feeder" is admitted by the defendant. This, however, may be a mere matter of word-splitting, provided they were used in a kindred art, as it is plain they were, and also that they were used under such circumstances and with such functions that they might have been adapted to the purposes to which the complainant put them, and as a part of the complainant's combination, without the exercise of the inventive faculty. The device of the earlier patent with which the new element was combined was, so far as we can discover, the first sewing machine which successfully accomplished the object to which we have referred, namely, forming mechanically an indefinite variety of elongated stitches on the surface of the material to be ornamented. The invention was originally intended for

use in connection with heavy materials, but later an effort was made to apply it to worsteds, knit goods, and other elastic goods. This required light tension, so that the thread would feed fast enough for forming elongated stitches, as required, without puckering. But immediately certain difficulties appeared. One witness testifies as follows:

"We then found out, in sewing on moderately light goods, that we had to carry such a light tension on the upper thread, to keep the goods from puckering, that the shuttle, passing through the loop, would drag a certain amount of thread from the constant tension, so that it would leave a loose loop underneath the goods, which was a waste of silk."

Another witness testifies to another difficulty, as follows:

"After the needle has carried a loop of thread through the cloth, and the shuttle has passed through the loop of needle thread, it is necessary to the proper completion of the stitch, by the drawing up of the needle thread around the shuttle thread, that the needle thread shall be held firmly by the tension until the loop has been nearly or quite drawn up."

These difficulties were speedily overcome by combining with the light tension a provision for holding the thread firmly at the critical period referred to in this testimony, which we have stated. The mechanism for accomplishing this involved some degree of ingenuity, and it entirely removed the difficulties, and made the machine successful for use in connection with elastic goods.

The respondent has introduced a great many earlier patents, not so much for the purpose of proving anticipation, in the strict sense of the word, as narrowing the construction of the claims in controversy. The defense rests mainly at this point. It would protract this opinion beyond any reasonable necessity to attempt to explain the numerous patents to which the respondent refers. It is sufficient that they show what are called "intermittent checks," which term expresses the pith of the invention in question. They were, however, not applied to the present use; and we think that there is sufficient to establish patentability in the presumption which arises from the issue of the patent, in connection with the principles applied by the court of appeals for this circuit in Heap v. Tremont & S. Mills, 27 C. C. A. 316, 82 Fed. 449, 453, 456. This being established, we have no question that the claims are to be construed as they are expressed, without any limitation by what appears in the specification, and that, so far as the specification shows details, the details are illustrative, and not essential.

On the question of infringement, the respondent relies on the phraseology with reference to which we have pointed out that claim 4 contains matter not found in claim 6. It is, however, our view that this additional matter does not involve a specific element in the combination. Moreover, even on the respondent's proposition, it is entirely clear that it infringes claim 6; and we are likewise of the opinion, for the reasons given, that the two claims are so substantially alike that it infringes each of them. Its machine copies the complainant's device in every particular, except that it does not strictly release the thread through the light tension "while the work is being moved by the work feeder." It attempts to avoid the pat-

ent by providing a supply of thread through the light tension in advance, but, as we construe the claims, this is plainly only a colorable difference.

It is maintained that the patentee was not in fact the first inventor, or, indeed, an original inventor; but the evidence on this point is not sufficient to overcome the patent, in view of the principles stated by the circuit court of appeals for this circuit in Brooks v. Sacks, 26 C. C. A. 456, 81 Fed. 403, 405. Let there be a decree, as to claims. 4 and 6, for a master and an injunction.