AUTOMATIC WEIGHING MACH. CO. v. PNEUMATIC SCALE CORPORA-
TION, Limited.

(Circuit Court, D. Maine.   January 1, 1908.)

No. 582, Equity.

1. PATENTS—SUIT FOR INFRINGEMENT—DECISION IN INTERFERENCE PROCEED-
ING.

On an appeal to the Court of Appeals of the District of Columbia from the decision of the Commissioner of Patents, in an interference proceeding between two applicants each claiming the same invention, the question at issue is merely one of priority as between two inventors; but in a subsequent suit for infringement of the successful patent in which its validity is attacked, the issue is broader, and involves the question whether the patentee was an original inventor as against the public at large, wherefore the decision in the interference proceeding is not of controlling force in such suit.

2. SAME—ANTICIPATION—PRIOR DISCLOSURE OF INVENTION BY ANOTHER.

Although one who was the first to conceive an invention may lose his right to a patent therefor as against a subsequent independent inventor of the same device by failing to use reasonable diligence in following up his conception, yet where he made known his invention to another and exhibited drawings, such disclosure, if of sufficient fullness to enable one skilled in the art to construct the device, completed the invention within the meaning of the patent law with the full effect as an anticipation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 66.]

3. SAME—AUTOMATIC WEIGHING MACHINE.

The Thomas patent No. 766,004 for an automatic weighing machine is void for anticipation.

In Equity.   On final hearing.

Phillips, Van Everen & Fish, and Elmer P. Howe, for complainant.
Fish, Richardson, Herrick & Neave, for respondent.

PUTNAM, Circuit Judge. This is a bill in equity alleging infringement of the first seven claims of a patent relating to an automatic weighing machine, No. 766,004, issued on July 26, 1904, to Edward G. Thomas on an application filed on December 17, 1896. The respondent claims under a patent which, so far as this case is concerned, is agreed to be identical, No. 633,675, issued to the assignee of George W. Watson on September 26, 1899, on an application filed on March 11, 1898. It will be noticed that the application for the patent to Watson was filed after the application for the patent to Thomas, but that the patent to Watson was granted first. This is said to have been through an oversight on the part of the Patent Office; but we do not perceive that we are concerned in determining precisely how this happened, or that the record enables us so to do, or that it would be of any substantial importance in this case, or to any party except the United States, to determine whether or not the patent to Watson was thus issued. After the patent to Watson issued, the case went to the Court of Appeals of the District of Columbia, under section 4911 of the Revised Statutes as amended by the act to establish the Court of Appeals for the District of Columbia, approved on February 9, 1893, c. 74, 27 Stat. 436 [U. S. Comp. St. 1901, p. 3391]. That court decided in favor of Thomas. 23 App. D. C. 65. We have no particular occasion to refer to that decision, except to the facts stated at page 67, which indicate that the questions involved are not practically free from doubt. In the Patent Office, the Examiner of Interferences adjudged priority to Thomas. He was reversed by the Board of Examiners, who were again reversed by the Commissioner of Patents, whose decision in favor of Thomas was affirmed by the Court of Appeals.

No one claims that the decision of the Court of Appeals is conclusive on the issue here; but it is maintained by the complainant that it is very persuasive. We should so regard it, and probably should follow it, if the issues were the same as those before us, although the proofs were not obtained on examination and cross-examination as in the case here. In Prindle v. Brown, 155 Fed. 531, the Court of Appeals for this circuit pointed out the peculiarities of the proceedings on interferences, even on appeal; so that, so far as the decision of the Court of Appeals is concerned, we rest on what we have said, with what is also said by the opinion in Prindle v. Brown, with the single addition which will be found to be of importance, that the Court of Appeals of the District of Columbia decided only as between two different persons claiming patents for the same invention, while here we are compelled to decide as between a party holding a patent and the general public. In the former case, each party to the issue was supposed to have been an inventor, and the question was one only of priority; while with us the question is whether Thomas was an original inventor under the statutes as against the public at large.

The invention in this case lies almost entirely in the conception because it is apparent that, when the conception had been fully explained, any person of ordinary skill in the art could put it into practical form.

The invention lies in the following propositions: It relates to a class of automatic weighing machines in which a succession of packages are fed automatically from a hopper containing the material, and simultaneously weighed and carried away. Prior to the invention in question, there was but a single hopper, and the packages were brought in succession to the platform of a scale beneath that hopper; and as each package came into position on the scale, the gate closing the mouth of the hopper was opened, and when a sufficient weight had been delivered to the package to tip the scale, the gate was closed automatically, and the package was carried away and another one put in its place. The patents are substantially identical, and each of them explains the improvement on the single hopper device in about the same way. Each points out the advantage of a double hopper machine, which is the subject-matter of the patent, and which we need not enlarge on. What was to be accomplished was speed and accuracy, of course avoiding waste. With a single hopper, if the material was fed rapidly, it led to waste before the gate could be closed; and, if in order to avoid waste, it was fed slowly, the operation would not be sufficiently speedy. Hence the idea, which forms the substance of the invention, of adding a second hopper, so that the package was partly filled quickly from the first hopper, without any special care as to accuracy, and then more accurately from the second hopper with a finer stream until the exact weight was reached, each hopper working simultaneously, but with a different package. Of course, the first hopper filled the larger part of the package, so that the second hopper, having less material to deal with, could receive more accurate handling, but in the same length of time required for the operation of the first hopper.

Watson completed his conception in January, 1896. As to this conception, the complainant admits as follows, coupling it with its own notion of the sole issue in the case:

"It will not be denied in the present controversy that Watson had conceived the invention, as found by the Commissioner and the Court of Appeals, by January, 1896, which is prior to the date of conception by Thomas. The sole issue, therefore, on this defense of prior invention, would seem to be whether Watson had sustained the burden of proof upon him to show the 'reasonable diligence' required by the statute."

This is followed by a statement from the complainant that it was not contended in the proceedings in the Court of Appeals of the District of Columbia, and would not be contended here, "that Watson was not in possession of a complete conception of the invention as early as January 10, 1896." It is also shown by both Watson and one Doble, for whom he was working, that in January, 1896, Watson explained the conception to Doble, and showed him drawings of the details of the mechanism covering each step in the series required to make an operative machine; and, referring to this, Doble testified as follows:

"Q. When Mr. Watson explained this drawing to you, did you understand the mechanism shown in it? A. I did fully."

This drawing was preserved and produced before us, and no question is made as to the date of its origin nor as to its sufficiency in

representing, so that any person skilled in the art might fully under-
stand, not only the underlying conception, but the ordinary method
of putting it into operation.  We are not therefore met with any of
the difficulties in regard to the amount of proof required discussed
in Brooks v. Sacks, 81 Fed. 403, 26 C. C. A. 456, cited and explained
by the Circuit Court of Appeals for this circuit in Westinghouse Co.
v. Stanley Co., 133 Fed. 167, 174, 177, 179, 68 C. C. A. 523.  The
facts are put beyond controversy; the only question is as to their
effect.

As stated in the opinion of the Court of Appeals of the District
of Columbia, Watson made no further effort with reference to the
invention in question until January, 1897, when he made some work-
ing drawings, and nothing further thereafter until he filed his ap-
plication for a patent.  The view expressed by Mr. Justice Story
in Reed v. Cutter, 1 Story, 590, 600, Fed. Cas. No. 11,645, based
on certain expressions of the statute, that one who has the earliest
conception, provided he uses reasonable diligence in adapting and
perfecting the same, may secure his patent, although the second in-
ventor has in fact first perfected the same conception, seems to have
been generally accepted, although we are not aware of any express
provision of the present statute or any decision of the Supreme Court
fully authenticating it.  The rule, however, is given in Walker on
Patents (4th Ed.) 126.  He lays it down only as an equitable rule, and
refers neither to any language of the statute nor any authoritative
decision of the Supreme Court.  However that may be, we are in-
clined to the opinion that Watson did not bring himself within any
rule of that character.  Therefore, Watson v. Thomas, 23 App. D. C.
65, already referred to, was no doubt correctly decided on the theory
which we have stated, that the case is strictly one between two, each
of whom originally, so far as the other was concerned, conceived
the invention.  Here, however, as we have said, we have a very dif-
ferent question.  Can Thomas' patent be sustained as against the
public in view of the fact that, as the record stands, his conception
does not go back of his application for his patent, while Watson, a
long time previously, not only had a complete conception, but de-
veloped it to Doble in the way we have explained?

Of course, the law is thoroughly settled that a mere conception,
not in some way demonstrated or communicated, does not amount
to an invention under the statutes of the United States.  This is so
thoroughly understood that we need hardly cite authorities for it.
Mr. Walker seems to make some distinction between drawings and
an oral description, based rather on circumstances than on any es-
sential difference.  At page 64 he says that, "in cases where the in-
vention may be exhibited in a drawing or model, it will date from the
completion of such a model or such a drawing as is sufficiently plain
to enable those skilled in the art to understand the invention."  In
Loom Company v. Higgins, 105 U. S. 580, 594, 26 L. Ed. 1177, the
court states the broad rule as follows on the precise question of pri-
ority:

"An invention relating to machinery may be exhibited either in a drawing or in a model, so as to lay the foundation of a claim to priority, if it be sufficiently plain to enable those skilled in the art to understand it."

This is a positive and broad statement, but in that case it was applied in favor of the patentee, so that we cannot assert positively that it goes beyond the rule favorable to patentees, as stated in Reed v. Cutter and by Mr. Walker, as we have already said. In Eames v. Andrews, 122 U. S. 40, 66, 7 Sup. Ct. 1073, 30 L. Ed. 1064, the court reiterates and affirms its own expressions with reference to foreign publications which are sufficient under the statute to anticipate. However strict that rule may be, and it is none too strict, what Watson explained and showed to Doble fully meets all its requirements. If, therefore, what he thus showed and explained had been published in some foreign scientific journal, it would have answered as a complete anticipation. Why should it not so answer when disclosed in the United States in the way which it was disclosed?

Three times the Circuit Court of Appeals for this circuit approached the precise question we have here, without being required to exactly meet it under the same or analogous circumstances. In Dececo Co. v. Gilchrist Co., 125 Fed. 293, 296, 60 C. C. A. 207, it discussed in a general way, with some illustrations, conceptions which were never fully practically developed or applied; but what is said there does not come close enough to the case at bar to be of use. In Westinghouse Co. v. Stanley Co., 133 Fed. 167, 170, 180, 68 C. C. A. 523, the invention was strikingly like that in question here in one respect. It lay in the fundamental conception, which being explained, the mechanical application of it was within the reach of any person of reasonable skill in the art. There it was ruled for that particular conception that, when the originator thereof had stated it, though only in general terms, he had made his conception clear, even though the mechanical details had not been expressed or thought out. It was there further pointed out that all which was learned from the inventor at what was fixed to be the crucial date was only "the general features of the invention"; yet it was held that, as against alleged priorities, the patent which was obtained for the invention thus communicated went back to the time of the communication. In that case, however, the ruling was applied in favor of the patentee, so that it may perhaps be said that it was supported by what Mr. Walker says on that topic as we have already observed; although neither in Westinghouse Co. v. Stanley Co. nor in the expressions of the Supreme Court which we have quoted, was there any limitation of that character stated or even hinted at. Next was the opinion of this court in Eastern Paper Bag Co. v. Continental Paper Bag Co. (C. C.) 142 Fed. 479. This opinion was accepted on appeal by the Circuit Court of Appeals, according to the report found in 150 Fed. 741, 80 C. C. A. 407. Therefore, we are justified in referring to it here as having sufficient authority for us. There invention appeared not only in the conception, but it also was, or might have been, involved in the practical application thereof. This is suggested at page 493 of 142 Fed.; so that a mere statement of only the conception would not have been sufficient. For this reason, and also by reason of the favorable rule

in behalf of patentees, we held the invention to date from the time it was practically worked out, as shown at pages 511, 512, and 516 of 142 Fed.

It follows that it can hardly be said that there are sufficient authorities, either in the decisions of the courts or in the text-writers, to guide us clearly under the circumstances now before us. We must consequently follow our own impressions with reference thereto. It seems to us that Watson completed this invention and expounded it in January, 1896, and that in this he went so far that the only thing needed to entitle him to a patent at that time was to employ some solicitor to put his application into the form required by the rules governing proceedings in the Patent Office. We cannot, therefore, resist the conclusion that Watson was a true inventor within the law; so that, in behalf of one who occupies the position of the public at large, and who is entitled to all the defenses to which one who is merely alleged to be an infringer is entitled, as is the condition of the respondent in this proceeding, Thomas cannot be held to have been "the original and first inventor," within section 4892 of the Revised Statutes [U. S. Comp. St. 1901, p. 3384].

While what we have said states clearly to ourselves the case as we apprehend it, we think some further references to particular cases may be necessary in order that no inferences may be drawn from this opinion beyond what we intend. The opinion of Mr. Justice Story in Reed v. Cutter, 1 Story, 590, Fed. Cas. No. 11,645, which is the basis of nearly all the discussions with reference to two independent inventors who are simultaneously working out the same conception, and the basis of all discussions of what is now the second paragraph of section 4920 of the Revised Statutes [U. S. Comp. St. 1901, p. 3394], leaves aside the precise proposition we have before us; and, therefore, it is that we have said that there is nothing in the statute relative to patents for inventions which throws any light on this case as we have developed the facts, except indirectly or by implication. In Reed v. Cutter this particular topic is discussed, beginning with page 596 of 1 Story (Fed. Cas. No. 11,645). At page 599 of 1 Story (Fed. Cas. No. 11,645), Mr. Justice Story lays down the proposition which is thoroughly established in law, that an invention resting on a mere theory, or a mere intellectual notion, or uncertain experiments, is not an invention under the patent laws. As was shown by the Circuit Court of Appeals for this circuit in Prindle v. Brown, 155 Fed. 531, 534, what is thus improperly called an invention is not at all an invention as known to the law. Mr. Justice Story, in the same connection, states impliedly what is in effect the reverse of this proposition when he refers to something "actually reduced to practice and embodied in some distinct machinery, apparatus, manufacture, or composition of matter." He does not touch directly on a condition substantially the same as that existing here. The reason of this is that section 4920 of the Revised Statutes relates to two persons competing for a patent for the same conception; though none of the decisions, so far as we understand, have undertaken to define authoritatively what is meant by the words "surreptitiously or unjustly" found therein. Of course, the word "surreptitiously" has no relation to a case where each party to an interference has really and truly pro-

ceeded independently and honestly; although the word "unjustly" may be strained to cover even a case like that. So Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, relied on by the complainant, was a special proceeding under the statute to determine a question of priority between interfering inventors, and the opinion said, at page 124 of 153 U. S., at page 773 of 14 Sup. Ct. (38 L. Ed. 657), that the case was "something more than a mere appeal," and was "an application to the court to set aside the action of one of the executive departments of the government." Therefore, for the reasons we have already stated, neither Morgan v. Daniels, nor the expressions of the opinion therein relied on by the complainant, assist us here. Christie v. Seybold, 55 Fed. 69, 5 C. C. A. 33, decided by the Circuit Court of Appeals for the Sixth Circuit, also much relied on by the complainant, is of the same class with Morgan v. Daniels, and passes by us in the same way. Prindle v. Brown, 155 Fed. 531, decided by the Circuit Court of Appeals for this circuit, and also relied on by the complainant, is careful to lay aside in general language a case like that before us, as though it anticipated that such a case might arise. The language of the opinion at page 534 of 155 Fed. is as follows:

"It is not necessary in order to complete an invention that there be a machine constructed, or even a model. The invention may be disclosed by the application sufficiently to entitle the patentee to priority as of the date of the application, or it may have been disclosed by a machine or model, or in some other concrete manner, a long time before the application was filed, so that the patent whenever applied for would go back to that disclosure."

The words "or in some other concrete manner" are broad enough to include a case like this at bar; and in Prindle v. Brown it was not necessary to determine the precise question now before us. We may add right here that the authorities, in their present condition, do not sustain the extreme view found in Robinson on Patents, vol. 1, § 126, which might in effect render invalid a patent for a machine, otherwise lawfully issued, because not based on one actually constructed and practically operated. A careful examination of Agawam Company v. Jordan, 7 Wall. 583, 606, 19 L. Ed. 177, and Whiteley v. Swayne, 7 Wall. 685, 687, 19 L. Ed. 199, shows that these decisions do not sustain the proposition for which they are cited in this connection.

Therefore, as we have already said, we find nothing in all the decisions brought to our attention which permits us to hold that what was disclosed by Watson to Doble in January, 1896, was not a complete invention under the patent law, with the same effect in the way of anticipation as though it had received publication on that date in a foreign scientific journal, or which requires us to leave a possibility, and even a probability, that any one assuming to have been a later inventor might not, in these days of great mechanical activity and of unlimited facility of communication, have become informed of what Watson had done, in some manner which neither the court nor the parties to the litigation have discovered, and thus have availed himself of what was already known at least to some person in the art, instead of having conceived anything new by his own mental operations. In order not only to guard the community from the evils of surreptitious information thus obtained, but also from the possibility of collusion, as well as

to give true effect to the statute which required Thomas to make oath in his application for his patent that he was both "the original" and "first" inventor, this supplemental explanation of the authorities, and of our conclusions, seems to be desirable.

Let there be a decree dismissing the bill, with costs for the respondent, under rule 21.