## ENTER v. QUESSE.

1. Under the Code of Procedure, interpreted in the light of the common law, a defendant cannot set up as a counter-claim a debt purchased by him after the commencement of plaintiff s action.
2. In a proceeding to enforce a mechanic's lien, defendants cannot, either at law or in equity, interpose, by way of counter-claim or set-off, a distinct and disconnected demand against plaintiff, purchased by them after issue joined, with knowledge that the plaintiff was insolvent.

Before PRESSLEY, J., Charleston, April, 1888.

The opinion fully states the case.

*Mr. H. E. Young*, for appellant.

*Messrs. Buist & Buist*, contra.

February 11, 1889. The opinion of the court was delivered by
MR. CHIEF JUSTICE SIMPSON. The plaintiff, respondent, instituted the proceedings below to enforce a mechanic's lien for the sum of $205, on certain premises of the defendants, Quesse and Greber, claiming priority over a mortgage of defendant, Young. The defendants answered, denying plaintiff's claim.

The case was referred to the master. At the reference, on February 10, 1888, when the plaintiff closed his testimony, the defendants, Quesse and Greber, having entered upon the defence, but not closing, the reference was adjourned, and on February 27, 1888, these defendants gave notice that they would move to amend their answer in two particulars, the second of which was to set up, in a supplemental answer by way of equitable defence,

a claim held by them against the plaintiff. This motion was made by these defendants upon an affidavit, that said defendants, since the beginning of this suit against them, and after the filing of their answer thereto, had bought a claim against the said plaintiff, amounting to $577.74, which they then owned; that the plaintiff was insolvent. This affidavit was not contradicted. The master overruled the motion, holding that the claim, not being in existence in favor of the defendants at the commencement of plaintiff's action, could not be set up.

Upon exceptions, his honor, Judge Pressley, concurred in the ruling of the master, holding, with him, that a counter-claim to be available must be one "existing in favor of defendant * * * at the commencement of the action," and saying: "In the matter of the equitable set-off craved by the defendants, my judgment is that said doctrine should not be so extended as to permit defendants to get advantage of other creditors, or to cast plaintiff in costs, or to defeat his right of homestead, if any exist, and some or all of these results might follow if defendants could set off against the plaintiff a claim purchased by defendants after plaintiff's suit began." At the same time, the defendants moved, if there was doubt about the insolvency of the plaintiff, that the case be remanded to the master for additional testimony on that subject. This motion was also overruled.

The main questions raised in the appeal are: 1st. Were the defendants, Quesse and Greber, entitled to set up this amount of $577.74 as a legal counter-claim to the demand of plaintiff against them of $205? 2nd. If not, could they set it up as an equitable set-off or counter-claim? It is contended by appellants, first, that under the provisions of the code they should have been allowed to set up their claim as an ordinary counter-claim, it being a matter arising on contract, and the action against them also arising on contract, although the claim of defendants was bought by them after the commencement of plaintiff's action, and even after answer had been put in, defending the suit upon other grounds.

It is conceded, that under the old practice and before the adoption of the Code, no claim of set-off arising under such circumstances would have been entertained or considered for a moment, it having been long since well settled that to entitle a debtor when

sued to set off a claim against his suing creditor, said claim must have had existence in his favor at the commencement of plaintiff's action. It is urged, however, by appellants, that this matter is now regulated by our code, and that there is nothing express in the language of the code which denies to a defendant the right to set up such a claim as a counter-claim, the code in its terms only requiring that the alleged counter-claim should have existence at the commencement of plaintiff's action. See *Code*, section 171. This is true as to the language of the section referred to. But we think that this section must be construed under the light of the long established principles of force on the subject of set-off before the adoption of the code, everywhere understood and enforced, both at law and equity, where set-offs were allowed. See *Shepherd* v. *Turner*, 3 McCord, 249; *Bishop* v. *Tucker*, 4 Rich., 178–183; *Waterman on Set-off*, 381—where he says: "A debt cannot be set off in equity any more than at law, unless it existed against the plaintiff, in favor of the defendant, at the time of the commencement of the suit," &c., &c. In the State of New York, where the language of the code on this subject is precisely that of ours, there seems to be no question as to this matter. The counter-claim must be not only in existence, but in existence in favor of the defendant interposing it, and at the time the action against him has been commenced. He cannot purchase it afterwards, and then set it up. See *Van Valen* v. *Lapham*, 13 How. Prac., 240; 5 Duer., 689. We think his honor's ruling, so far, was correct.

The appellants' attorney, however, urges earnestly, that if this claim cannot be set up as a counter-claim under the provisions of the code, that still the defendants should be allowed to do so as an equitable set-off, founding the claim for equitable interference upon the insolvency of the plaintiff. Now, let it be admitted, that plaintiff was, and is, still insolvent, can this position of appellant be sustained? Can this claim be set up as an equitable claim, contradistinguished from a legal counter-claim? It is true, that in England, and before the adoption of the statutes of set-off, the Court of Chancery had assumed jurisdiction of the matter of set-off, and had made it a subject of equity jurisdiction in certain cases. For instance, in cases of mutual debts and credits con-

nected with each other, as where the transactions or dealings
constitute an account, consisting of receipts and payments, debts
and credits, and where, consequently, the balance due only could
be the debt between the parties, the Court of Chancery took juris-
diction, and allowed these debts and credits to be set off against
each other and balanced, so as to find the actual amount due,
instead of forcing the parties to sue at law upon their several
demands.    So, too, where the debts and accounts between the
parties were unconnected, even if some peculiar equity intervened
demanding a set-off, the Court of Chancery would enforce it as a
matter of equity jurisdiction.

But in this latter class of cases, there had to be something more
than merely separate and opposing debts.   There had to be some
mutuality, this term being used in the sense of some relation or
connection or dependence with and upon each other, as, for
instance, a knowledge on both sides of an "existing debt due to
one party and a credit by the other party, founded on and trust-
ing to such debt as a means of discharging it." *Ex parte Pres-
cott,* 1 Atk., 231.   This mutuality is explained by Judge Story
as follows: If A should be indebted to B in the sum of £10,000
on bond, and B should borrow of A £2,000 on his own bond, the
bonds being payable at different times, the nature of the trans-
action would lead to the presumption that there was a mutual
credit between the parties as to the £2,000 as an ultimate set-off
*pro tanto* from the debt of the £10,000; and if the bonds were
both payable at the same time, the presumption of such a mutual
credit would be converted into an absolute certainty.   In such a
case, the Court of Chancery would have decreed a set-off, even
before the adoption of the statutes of set-off, providing for uncon-
nected debts being set off against each other.

And sometimes, too, a joint debt could have been set off in
chancery against a separate debt, and conversely a separate debt
against a joint one, but in all such cases antecedent to the statute
allowing separate and unconnected debts to be set off, the one
against the other, the Court of Chancery, before it interfered,
required the presence of some peculiar and special equity, de-
manding such interference, such as a mutual credit in the sense
explained above.   "Whenever there is a *mutual credit* between

the parties," says Judge Story, "touching such debts, a set-off is upon that ground alone maintainable in equity, although the mere existence of *mutual debts* might not even in a case of insolvency sustain it." "But the mere existence of cross demands will not be sufficient to justify a set-off in equity. Indeed, a set-off is ordinarily allowed in equity only when the party seeking the benefit of it can show some equitable ground for being protected against his adversary's demand, the mere existence of cross demands is not sufficient," &c., &c. 2 *Story Eq. Jur.*, 1433*b*.

Now, what special equity do the defendants invoke here? They rely upon the insolvency of the plaintiff. This, we think, under the authorities, some of which have been cited by appellant, would have been sufficient, under the chancery rule above, to authorize the Chancery Court to decree a set-off, providing that the claim attempted to be set up had been in existence in favor of defendant when the plaintiff commenced action. In *Lindsay et al.* v. *Jackson and McJimpsey* (2 Paige, 581), cited by appellants, it was held that insolvency of one of the parties was a sufficient ground for the court to exercise its equitable jurisdiction in allowing an equitable set-off. But the set-off claimed and allowed was in existence in favor of the claimant at the same time with the other debt when the action began. And this, we think, will be found to be the fact in all of the cases, where such set-off has been allowed, on the ground of insolvency, by the Chancery Court as a matter of equity jurisdiction. We have found no case, nor have we been referred to any, where the defendant was allowed to interpose an insolvent claim against his suing creditor, bought up after action brought, and sought to be interposed on the ground of the insolvency of his creditor. The nearest approach to such a case is the case of *Aldrich* v. *Campbell*, cited by appellant, and found in 4 Gray, 284, where a negotiable promissory note was purchased, without notice that an action had been commenced on a debt from the purchaser to the maker, and before the notice of insolvency; the note under these circumstances was set up.

How different the equity there from the case before us. Here the claim in question was bought not only after action begun, but after answer put in and issue joined, and we must suppose, from the affidavit submitted on the motion to amend the answer, with

full knowledge of the insolvency of the plaintiff.   Mr. Waterman says : "A debt cannot be set off in *equity any more than at law*, unless it existed against the plaintiff in favor of the defendant at the time of the commencement of the action, and had then become due and payable." Section 381.   He says, further, that the defendant cannot set off a debt of an insolvent which he had purchased with knowledge of insolvency.   Section 133.   See, too, *Smith* v. *Hill*, 8 Gray, 572.   We have examined the numerous authorities referred to by appellants' counsel, but we have not found that they sustain the position, that a claim like that interposed here by the defendants, and purchased by the defendants after action brought and answered, and with full knowledge of the insolvency relied on as a ground of equity, can be entertained either as a counter-claim at law or as an equitable set-off under the equitable jurisdiction of the old Court of Chancery, now merged in the Court of Common Pleas.   Hence, we must sustain the Circuit Judge in his ruling upon this question, and without regard to the probable consequences suggested by him as to the homestead, &c., which are discussed in the argument of appellant, but which we do not consider as involved necessarily in the appeal.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.