## HUDSON MOTOR SPECIALTIES CO. et al. v. APCO MFG. CO.

(District Court, D. Rhode Island. April 24, 1923.)

### No. 133.

1. **Patents ☞328—1,263,879, for lug for power plant support for motor vehicles, void for lack of invention.**
   The Gerosa patent, No. 1,263,879, for a lug for power plant support for motor vehicles, a crank case repair arm particularly adapted to Ford automobiles, *held* void for lack of invention.

2. **Trade-marks and trade-names and unfair competition ☞70(1)—Requisites to unfair competition by imitation.**
   To maintain a charge of unfair competition by imitation of goods it is necessary for complainant to show that the appearance of his goods has in fact come to mean that some particular person makes them, and that the public cares who does make them, and not merely for their appearance and structure.

3. **Trade-marks and trade-names and unfair competition ☞70(1)—Copying of merely mechanical device, without nonfunctional features, not unfair competition.**
   Similarity between merely mechanical devices, without nonfunctional features, is not sufficient to sustain a charge of unfair competition, especially where defendant marked its product with its name.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Patents ⬅316—Unwarranted assertion of rights in circulars enjoined.**

Where complainant in circulars and letters went beyond the giving of notice of its claims to patent rights, making defamatory charges against defendant, and obtained consent decrees against defendant's customers, which it advertised in such a way as to convey the impression that its patent had been sustained on the merits, on an adjudication of the invalidity of the patent, defendant *held* entitled to an injunction restraining further assertion of rights thereunder.

In Equity. Suit by the Hudson Motor Specialties Company and Anthony Gerosa against the Apco Manufacturing Company. Bill dismissed, and injunction granted to defendant.

J. King Harness, of Detroit, Mich., Alfred H. Hildreth, of Boston, Mass., and Stephen J. Casey, of Providence, R. I., for plaintiffs.

Wallace R. Lane, of Chicago, Ill., Arthur M. Allen, and Chauncey E. Wheeler, both of Providence, R. I., for defendant.

BROWN, District Judge. The bill charges infringement of letters patent No. 1,263,879, to Anthony Gerosa, for "lug for power plant support for motor vehicles," granted April 23, 1918, on application filed May 9, 1917. The bill also charges infringement of plaintiffs' trade-mark "Crank Case Repair Arm," and unfair competition in the copying of the special form in which plaintiff, Hudson Motor Specialties Company, had embodied the invention of the Gerosa patent.

The defendant has filed a so-called counterclaim, alleging inequitable conduct of the plaintiff Hudson Motor Specialties Company in circularizing the trade with threats of litigation, in bringing unfounded suits, and in issuing letters and circulars containing statements defamatory of the defendant, and injuriously affecting its credit.

The defendant raises the defense of unclean hands. Although this is ordinarily a preliminary question, as it involves a charge of the beginning of unfounded suits upon the Gerosa patent, it is necessary to consider the nature of the invention claimed therein. We are therefore not relieved from consideration of the merits of the plaintiffs' case by the charges of plaintiffs' bad faith in instituting litigation and of misconduct in circularizing the trade.

[1] The lug, or crank case arm, of the Gerosa patent, consists of a vertical plate having a horizontal top extension and two horizontal bottom extensions. The top extension is in a direction opposite to the direction of the two bottom extensions. There is a hole in the vertical plate, and a hole in each of the horizontal extensions. The arm is particularly adapted to the Ford automobile. The holes in the top and vertical portions of the plate are made to register with holes already in the frame of the Ford chassis, and the holes in the bottom extension register with holes in the flanges of the crank case. The Ford crank case arm is not bolted to the flange of the crank case, but is secured by three bolts to the sheet metal casing of the lower half of the power plant housing.

The specification of the Gerosa patent refers to the liability to breakage of lugs or arms of the Ford type, and states that to remedy

such breakage requires the dismantling of the power plant in order to get at the transmission cover, so that a new connection may be effected. It appears that the Ford Company furnishes crank case arms of substantially the same construction as the original arms, to replace broken arms, but that repair in this way is expensive and time-consuming.

The lugs or repair arms of the Gerosa patent may be quickly applied, without separating the upper and lower casings of the crank case. It appears by the specification that it was Gerosa's object to provide a repair arm which could be readily applied by unskilled labor in a few moments, and—

"to provide inexpensive, simple, efficient lugs for application to a motorcar chassis before or after the ordinary lugs become broken, whereby in case the improved lugs are applied prior to breakage they will still maintain the motor transmission and its complemental propeller shaft in alignment, and whereby, in case the support is applied after breakage, dismantling of the engine is obviated."

The plaintiff Hudson Motor Specialties Company did not put upon the market an arm in the form of the solid plate described in the Gerosa patent, but by cutting out portions of the vertical plate, and by other changes, gave the arm an appearance distinct from that shown in the Gerosa patent. If the Gerosa patent is valid, there can be no doubt that the defendant has infringed.

The important question is whether the patent is invalid for want of invention. The defendant contends that the Gerosa patent is invalid on its face, and that—

"the supporting lug or arm of the Gerosa patent is nothing more than an ordinary bracket or arm, that the ordinary blacksmith and automobile mechanic would and did use to make similar repairs whenever occasion required."

The plaintiff contends that the Gerosa invention was the solution of a problem which had existed for six or seven years and had never been solved; that there was public demand for such a solution, and instant commercial success. The plaintiff alleges that the original Ford arms have been continuously breaking since the Ford model T car first came upon the market, in 1908 or 1909, and cites authorities to support the proposition that an apparently simple device may be proven to involve invention by showing the existence of the problem for a number of years without a solution.

To the objection that a device is so simple that any mechanic could have made it in the exercise of his ordinary skill, and without invention, it is often an answer to show that, though the need was recognized, the problem was not solved by any of the numerous mechanics whose attention had been brought to it, who, instead of making a simple device, devised other more complicated and less satisfactory means.

The plaintiff shows that one mode of repair was a band which encircled the entire lower portion of the crank case, but that this was not a satisfactory method of repair.

The defendant, however, denies the fact that the problem of repairing the broken Ford arm remained unsolved for seven years, or that

Gerosa was the first to solve it. On the contrary, it adduces evidence to show that the problem of repairing the broken Ford crank case arm was presented to the ordinary mechanic at various times and places, and was readily solved by attaching a bracket or Z-bar, the top end of which was applied to the frame and the bottom end inserted under and bolted to the flanges of "the crank case through the bolt holes, which were designed to secure together the two parts of the crank case.

It appears by credible oral testimony that as early as 1910 the Pearson Bros., automobile mechanics of Providence, R. I., made repairs for broken crank case arms by using a pair of Z-bars which hung from the frame and engaged the flanges of the crank case; one bracket on each side of the Ford arm. Chester A. Pierce, an automobile repairer of Providence, R. I., testified that in 1913 he repaired Ford machines principally. He testified that a Ford machine with a broken crank case arm came to his place requiring immediate repairs; that he conceived the idea of bolting a piece of iron rigidly over on the frame and over on the casing; that he went to William H. Miller & Sons, who did his forging, and had them take a piece of 3-inch flat iron, split it up the center, and throw the arms back for the purpose of straddling the broken arm; that this was done, and that he bolted the piece onto the frame and to the flanges of the crank case. His testimony is corroborated by William H. Hickey. It appears also that a similar device was applied to one or two other cars.

There was also evidence concerning the production of an arm in 1910 by W. Burton Smith, of Sioux City, Iowa, similar in principle to the Pierce arm of 1913. There is also testimony of the construction in San Francisco, Cal., of a similar device in 1915, called the California arm, and of a similar device produced at Chester, Pa., in December, 1915.

Though Gerosa's application date is May 9, 1917, the plaintiff Hudson Motor Specialties Company contends that his true date of invention is May or June, 1915, and that he anticipates the devices made in Chester and in San Francisco in 1915. But it is not important to determine the question of anticipation by these two devices; we are now concerned with the question of invention.

In considering the question whether or not it involved invention to construct a bracket which straddled the old crank case arm and engaged the flanges of the Ford automobile, we have to bear in mind that the problem was a limited one of repairing a specific broken machine, so that its crank case, which had dropped, might be held up. It is in accordance with all the probabilities that any mechanic would have seen that the projecting flanges of the crank case afforded the most obvious point for support. I am unable to agree that the two flanges appeared so ill-adapted to be engaged by a supporting bracket that any mechanic would have rejected their use, especially in view of the credible testimony from intelligent witnesses—the Pearson Bros., Pierce, and Hawley, who all appeared before me—that they made arms to hold up the crank case and bolted them to the flanges. It is to be noted also that Mr. Anglada, plaintiffs' expert, refers to the "inflexible flange."

The exhibits of the work of various mechanics show that they independently decided to use the flanges as the most obvious projection on the part which had to be upheld.

By the defendant's experts much stress is laid upon the fact that the leverage of the old Ford arm was much greater by reason of the fact that its lower portion was attached to an unstable part of the crank case, namely, to the sheet iron which formed the crank case. If it be assumed that the flanges are a better place for attachment because they give a more solid base than the sheet iron of the casing, this seems to contradict the expert theory that the flanges of the crank case are so obviously unadapted for this purpose that nobody would think of using them.

William H. Kennerson, professor of mechanical engineering at Brown University, and a consulting engineer, a well-known and reliable witness, testified to a personal experience in which an ordinary mechanic was called upon to make repairs on his machine, and made a simple Z-bar, which he attached to the frame and housing of the transmission. He also was of the opinion that the designing of a device like that of the Gerosa patent would not require any particular skill other than that possessed by the ordinary mechanic. I agree with his opinion. The fact seems to be that the commercial value of the device is due to the enormous number of Ford machines and to the great number of breakages, which require for their repair large quantities of material, and of metal parts of various kinds. But as the enlarged sales of ordinary materials, or ordinary manufactured articles, such as bolts, nuts, etc., for repair of Ford machines, afford no evidence of invention, so the demand for Z-bars, growing out of the large number of breakages of crank arms, affords no evidence of invention.

The plaintiffs also complain of unfair competition. The arm put upon the market by plaintiffs in form differs from that shown in the Gerosa patent, in the cutting out of a part of the metal, thus making what may be roughly described as an A-shape. For about a year the defendant copied this form; but in 1919, under advice of counsel, ceased to do so, and made its arms in substantially the form shown in the Gerosa patent in suit. From that time there was such dissimilarity in the appearance of plaintiffs' and defendant's arms as to render it unlikely that one should be mistaken for the other. Since that time the defendant has secured a design patent on what is substantially the original Gerosa arm, and in one circular described its arm as "the Apco Arm," "Patented." Of this the plaintiffs complain, as a false representation. I do not see, however, that this tended to create mistake or confusion between defendant's goods and plaintiffs'; at most, it seems to have been an attempt to give a color of right to use the word "patented," and to create an erroneous impression that the defendant had a mechanical patent. I find no evidence that the defendant's arm was marked "patented," and the circular advertised the arm under defendant's name, "Apco."

Plaintiffs further complain of infringement of the names and trade-marks, "Crank Case Arm" and "Crank Case Repair Arm." It

is proven, however, that the use of the term "Crank Case Arm" was old, and it is evident that these terms are descriptive, and not subject to appropriation by the plaintiffs. I find no merit in the plaintiffs' contention as to infringement of any of plaintiffs' trade-mark rights.

The question of unfair competition by defendant relates especially to the period of time prior to the adoption of defendant's present style of arm. Apparently the plaintiff took immediate precautions against any chance of a mistake of identity by a vigorous campaign of advertising to the trade, denouncing the defendant in very vigorous terms.

[2] To maintain the charge of unfair competition by imitation of goods it is necessary for the plaintiff to show:

"That the appearance of his wares had in fact come to mean that some particular person—the plaintiff may not be individually known—makes them, and that the public cares who does make them, and not merely for their appearance and structure."

See Crescent Tool Co. v. Kilborn & Bishop Co., 247 Fed. 299, 159 C. C. A. 393.

In the present case the plaintiff put the article upon the market and at first purposely avoided the use of the name "Hudson." It appears, also, that it was a casting made at a foundry, and that there were upon the market arms made by other manufacturers. That during the period prior to the spring of 1919, when defendant adopted the present form of its arm, the crank case repair arm was exclusively associated in the public mind with the Hudson Motor Specialties Company as manufacturers, is not proven. The facts that plaintiff at first avoided the name of "Hudson," that a number of other manufacturers, whom the plaintiff regarded as infringers, were putting crank case arms on the market, and that the article was a foundry product, make a case of "nonactionable imitation of merchandise without deception as to authorship," similar to that dealt with by this court in Eisenstadt Mfg. Co. v. J. M. Fisher Co. (D. C.) 232 Fed. 957, 959, 962. That the defendant has profited by the fact that the public mistakenly purchased its goods, when they desired specially the plaintiffs', does not seem to me to be established by the proofs. See Straus v. Notaseme Co., 240 U. S. 179, 36 Sup. Ct. 288, 60 L. Ed. 590.

It may be said that, where the articles are similar and are sold in large quantities, the liability to mistake one for the other may be presumed; but the fact that one is as likely as the other to be taken by a customer on its appearance or workmanship does not make a case of deception. In order to be deceived or led into mistake, the purchaser must have associated the article with a particular producer, or suppose that he is getting what he already knows about as a desirable product.

[3] The article in question is merely a mechanical device designed to perform a strictly mechanical function, and is without ornamental or nonfunctional features. The defendant denies that it copied at any time any nonfunctional features of plaintiffs' arm, and the plaintiffs have not pointed out any distinguishing features or peculiarities of form which are merely ornamental or nonfunctional.

I am of the opinion that the plaintiffs do not make out a case for equitable intervention to prevent confusion of goods.

The defendant infringed no legal right of the plaintiffs by copying the first form of arm, and according to the preponderance of the evidence had marked its product with the name "Apco,", and advertised it under that name, to show that it was not the product of the plaintiffs. See Keystone Type Foundry Co. v. Portland Pub. Co., 186 Fed. 690, 108 C. C. A. 508. Furthermore, it had ceased to manufacture this form for about two years before the filing of the bill.

The principal controversy between the parties arose from defendant's denial of patent rights and trade-mark rights.

The plaintiffs' very vigorous advertising campaign against the defendant seems to have left little danger that the defendant could have been guilty of "passing off" its goods for plaintiffs', even had it desired to do so. If the plaintiffs had cause to complain of the imitation of their goods, they did so on the ground of a violation of their patent rights and trade-mark rights, and complained to the public in terms that the defendant might well resent.

[4] The plaintiffs were within their rights in giving notice to the trade of their claim of patent rights.

I am not satisfied that in asserting the validity of the Gerosa patent, and in its threats of suit against infringers, or contributory infringers, the Hudson Company acted in bad faith; its claims of trade-mark rights in the words "Crank Case Arm," and "Crank Case Repair Arm," seem extravagant, but not necessarily made in bad faith. The employment of the terms "thief" and "pirate," and "thief in the night" overstepped reasonable limits, however. If a plaintiff seeks to employ, out of court, for his own protection, means which are not permissible in orderly litigation, this may in some cases justify a court in saying that a plaintiff who already has used inequitable weapons has no claim to the intervention of a court of equity.

In several particulars the plaintiffs' circulars and letters went beyond the giving of a notice of its claim of patent rights and of its intention to protect them. The defendant was accused of "subterfuge" and of "broken faith" in its dealings with jobbers, of failing to protect distributors, and there were insinuations that its agreements to protect customers were worthless. Various suits were brought against customers of the defendant; consent decrees for injunction were obtained and advertised in such way as to convey the impression that the courts had sustained the plaintiffs' patent on its merits.

In view of the very active interference by plaintiffs with defendant's customers and foundrymen, I am of the opinion that the defendant is entitled to an injunction restraining the plaintiffs from further asserting any rights of action at law or in equity under the Gerosa patent in suit, or in respect to any trade-mark rights in the name "Crank Case Arm," or "Crank Case Repair Arm," against said customers and foundrymen, and from otherwise interfering with defendant's trade in repair arms similar to those now manufactured by defendant.

The bill will be dismissed, with costs.

The defendant may have an injunction, as above indicated.

Draft decrees may be presented accordingly.