UNITED KINGDOM OPTICAL CO., Limited, et al. v. AMERICAN OPTICAL CO. et al.

No. 3446.

District Court, D. Massachusetts.

Jan. 11, 1933.

H. A. Toulmin and H. A. Toulmin, Jr., both of Washington, D. C., and Warren, Garfield, Whiteside & Lamson and Irvin McD. Garfield, all of Boston, Mass., for plaintiff Univis Corporation.

Fish, Richardson & Neave and Harrison F. Lyman, all of Boston, Mass., for defendants.

LOWELL, District Judge.

This is a suit for the infringement of letters patent 1,729,654, issued to Watson and Culver on October 1, 1929, which was assigned to the United Kingdom Optical Company, of which the Univis Corporation is the sole licensee. The complainants contend that this patent covers a method of making optical lenses in which the two segments of the button, so-called, are left with a gray finish before they are fused together. The evidence did not convince me that the result of leaving the edges of both segments of the button gray accomplished any useful result; the many sales of the plaintiff's lenses may as well have been due to their excellent quality as to their having been made in conformity to the patented process; but I need not found my decision on that fact.

In the manufacture of bifocals, the principal lens is made of crown glass; in the back of this is ground a spherical cavity known as the countersink, which is filled by fusing into it the button, made up of two kinds of glass. When the lens is finished the major part of it is composed of crown glass and the minor part of flint glass, or barium crown glass. Both of these kinds of glass have a higher refractive index than crown glass; this is the technical way of saying that the rays of light entering the glass are changed in direction more when they strike flint glass or barium crown glass than when they strike crown glass.

Flint glass is used for the reading portion of a bifocal lens, and in the finished product as it is usually made this becomes a semicircular piece of glass fused with the lens itself and occupying part of the lower portion thereof. The method of producing this result is as follows: Two segments of glass are fused together to form the button. One segment is made of crown glass and the other of flint glass. The button is then placed in the countersink and fused to the lens. When this last process is completed, the crown glass segment fuses with the main lens and entirely disappears in it. The flint glass segment, however, retains its original substance and becomes the reading portion of the lens.

The two segments of the button are placed close to one another and then put in a furnace, where they are subjected to a high degree of heat, which fuses them together. The patent in suit relates to the process of forming this button. It appeared in evidence that the steps necessary to prepare the two segments before they were fused together consisted of two major processes. The first one was called "grinding"; the second "polishing." The first process was divided into two, or sometimes three, steps, called rough grinding, smooth grinding, and fine grinding, and was accomplished by the use of emery. The further process of polishing was brought about by the use of polishing rouge. It was in evidence that at the end of the grinding process the edges of the segments were left considerably roughened and formed what were known as gray edges. The plaintiffs contend that the patent showed a process whereby the edges of both of the segments were left in the gray state. In my opinion the contention is unsound. The patent relates to a process whereby the several edges were left in a different state of roughness, and there is no statement that the edges of the flint segment should be left gray. The specification described a crown segment with the edge preferably gray, and a flint segment with the edge semipolished. In my opinion the patent does not cover a process where the edges of both segments are left gray. Permutit Co. v. Graver Corp., 284 U. S. 52, 52 S. Ct. 53, 76 L. Ed. 163.

The plaintiffs lay stress on the statement on page three of the specification that: "It will be understood that we desire to com-

prehend within our invention such modification as may be necessary to adapt it to varying conditions and uses."

This is the usual clause in a patent which is introduced to bring within its scope anything relating to the machine or process described by it which is afterward discovered to be of value, although it was not conceived of by the patentee. The clause has no such effect, but rather draws attention to the fact that the patentee had not thought of the later-discovered useful result. 2 Roberts, Patentability and Patent Inventions, p. 618. I therefore find that the defendant, which at one time left the segments of both edges gray, has not been guilty of infringement.

The defendant admits that at one time it made bifocals with the edges of both the segments left gray; but it says, and the evidence shows, that pending the determination of the present suit it discontinued that practice and polished the edges of both segments. It desires, however, to be able legally to continue the practice of leaving both edges gray, because it contends that the further step of polishing accomplished no useful result, and is merely a waste of time and money. This I find to be the fact.

■ If I am wrong in my interpretation of the patent and it should be so construed as to cover segments both of which have gray edges, the question arises whether at the time the patentees filed their application the alleged invention was novel. I find that it was not. The file wrapper of patent No. 1,160,-383, granted in 1915 to Henry A. Courmettes, shows that he had practiced the same process. It was in evidence also that several pairs of lenses had been made by this process at the defendant's works in Southbridge before 1919. This fact is supported by the testimony of four witnesses, which was not impeached.

In my opinion the patent does not cover a process of making the button of a bifocal lens with the edges of both segments left gray. If it were so construed, it would be void for lack of novelty. There is no doubt in my mind that the witnesses were telling the truth and were not mistaken in their testimony. The contention of the plaintiff that prior use requires for its proof written evidence is unsound. There are expressions in several of the cases that the matter is of such difficulty that where the alleged prior use occurred several years ago, the testimony of witnesses unsupported by any written memorandum should be received with great caution. Brooks v. Sacks (C. C. A.) 81 F. 403;

Emerson & Norris Co. v. Simpson Bros. Corporation (C. C. A.) 202 F. 747.

This of course is sound, but the real question is whether the trial judge is satisfied that the witnesses are truthful and have not been mistaken. Deering v. Winona Harvester Works, 155 U. S. 286, 301, 15 S. Ct. 118, 39 L. Ed. 153. In the Emerson Case, the question of a prior use depended on quite complicated facts; whereas in the case at bar it is very simple.

■ The defendant's counterclaim raises an interesting point of law on which there is very little authority. The question is whether the court has jurisdiction under a counterclaim over a cause of action arising after the bill of complaint had been filed. The only two cases to which I have been referred are Parker Pen Co. v. Rex Mfg. Co. (D. C.) 11 F.(2d) 533, and Flowers v. Magor Car Corporation (D. C.) 26 F.(2d) 98. (Chute v. Wisconsin Chemical Co. [C. C.] 185 F. 115, cited by the plaintiff, did not involve the jurisdiction of the court to consider a counterclaim arising after suit was brought, but the effect of alleged inequitable conduct by the plaintiff after he had filed a bill for infringement of a patent.) In neither of them was the point decided; but in the latter Judge Rellstab gives it as his opinion that the court has discretion to consider the counterclaim. The solution of the problem depends on the meaning of Equity Rule 30 (28 USCA § 723). The object of that rule was to prevent multiplicity of suits, and the Supreme Court has said that it should be liberally construed. American Mills Co. v. American Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306. There is no provision in rule 30 expressly requiring that the counterclaim should date from before the filing of the bill. I therefore adopt Judge Rellstab's opinion and proceed to the consideration of the merits of the counterclaim.

On August 21, 1931, the American Optical Company published an article in the Optical Journal and Review saying that it had been sued on a process patent, and that its licensees (who sold lenses, but did not make them) need have no fear, as the suit being for a process of manufacture, they did not infringe.

That advertisement had reference to the suit before this court. Afterward another suit on a different patent was brought by the Univis Corporation in Cincinnati against a licensee of the American Optical Company and the company itself. In September, 1931, the Univis Corporation pub-

lished an advertisement calling attention to the second suit. On September 10, 1931, the American Optical Company published an advertisement in the Optometric Weekly in which it printed a copy of its former notice, and then said:

"At the time this copy was written this was the only suit of which we were aware. Since then a second suit has been filed by United Kingdom Optical Co., Ltd., of England, and the Univis Corporation against American Optical Company and W. N. Benedict Co., of Cincinnati, on a product patent.

"On the opposite page we repeat our statement about the Boston process patent suit and make the following unqualified statement regarding any other suit on Ful-vue Bifocal lenses.

"American Optical Company will defend this suit and will defend any of its customers or purchasers of this product against any suit which may be brought against them for patent infringement based on the use or sale of Ful-vue Bifocal lenses. American Optical Company guarantees all such customers and purchasers against any liability for patent infringement on account of the use or sale of these lenses."

It published a similar notice in the Optical Journal and Review on September 11, 1931.

On September 17, 1931, the Univis Corporation published a notice in the Optometric Weekly stating as follows:

"On this page is quoted a statement in an advertisement by the American Optical Company with reference to The Univis Corporation suit at Cincinnati against W. N. Benedict Company, a dealer, and the American Optical Company jointly.

"On the opposite page is a photographic reproduction of an official paper filed by the American Optical Company in the United States District Court at Cincinnati, seeking to get Itself out of the suit."

(The official paper was a motion to dismiss the suit as against it on the ground that the American Optical Company did not have an agent in Cincinnati qualified to accept service.)

The notice went on as follows:

"In its advertisement the American Optical Company said:

"American Optical Company will defend this suit and will defend any of its customers or purchasers of this product against any suit which may be brought against them for patent infringement based on the use or sale of Ful-vue Bifocal lenses."

"At the same time this advertisement appeared, the American Optical Company was endeavoring to get Itself dismissed from the joint suit (as shown on the opposite page) the granting of which motion by the court would leave the dealer to face the infringement by himself."

The Univis Corporation published a similar notice in the Optometric Journal and Review on September 11, 1931.

In October, 1931, the American Optical Company published the following notice in the Western Optical World:

"Ful-Vue Bifocal Protection

"American Optical Company will defend itself and any of its customers against any suit which may be brought against them for patent infringement based on the use or sale of Ful-vue bifocals. American Optical Company guarantees all such customers and purchasers against any liability for patent infringement on account of the use or sale of Ful-vue bifocals."

In November, 1931, the Univis Corporation repeated in the Western Optical World the notice which has already been described.

 The first notice by the Univis Corporation seems to the court unobjectionable. The second, however, was unfair. It gave the impression that the American Optical Company was trying to run away from the Ohio suit, leaving its licensee defenseless. In their brief the counsel for the plaintiff say: "The plaintiffs have conducted themselves in this connection with the utmost propriety." Page 2. I am constrained to disagree with them. The notice was cleverly worded to convey the impression that the American Optical Company was not going to carry out the promise to defend its licensees. If the notice had called the American Optical Company a liar, there would have been no doubt that this would have been improper; see Gerosa v. Apco Mfg. Co. (C. C. A.) 299 F. 19, 26; Hudson Motor Specialties Co. v. Apco Mfg. Co. (D. C.) 288 F. 871; but it did the same thing with more effect in a roundabout way.

Bill dismissed. Injunction to issue on the counterclaim.