## TEXAS CO. et al. v. BORNE SCRYMSER CO.

### No. 3512.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1933.

Brady Cole, of Houston, Tex. (Drury W. Cooper, of New York City, Frank G. Tompkins, of Columbia, S. C., Donald Brooks and Cooper, Kerr & Dunham, all of New York City, Baker, Botts, Andrews & Wharton, of Houston, Tex., and Tompkins & Gary, of Columbia, S. C., on the brief), for appellants.

Oscar W. Jeffery, of New York City (Reginald Hicks, of New York City, and Stephen Nettles, of Greenville, S. C., on the brief), for appellee.

Before PARKER, and SOPER, Circuit Judges, and WATKINS, District Judge.

SOPER, Circuit Judge.

Suit for infringement of a patent was filed by the complainant in the District Court against two defendants who filed a joint answer denying the validity of the patent or infringement thereof. One of the documents presented in the same pleading a counterclaim against the plaintiff for infringement of another patent, and the complainant filed a motion to dismiss the counterclaim principally on the ground that the defendant-claimant had acquired the cause of action subsequent to the filing of the original bill. The district judge granted the motion and dismissed the counterclaim, from which action

this appeal was taken in accordance with the practice approved in General Electric Co. v. Marvel Rare Metals Co., 287 U. S. 430, 53 S. Ct. 202, 77 L. Ed. 408.

The original bill of complaint was filed by Borne Scrymser Company, a New Jersey corporation, as the owner through assignment of United States patent No. 1,550,396 to Robert Bigham Smith for certain improvements in oiling cotton raw stock. The bill charged that Gaffney Manufacturing Company, a South Carolina corporation, had installed in its mill certain apparatus designed to be used to practice the process described and claimed in the patent, and had used the apparatus in violation of the plaintiff's rights; and that the Texas Company, a Delaware corporation, had made the apparatus and procured its installation at the Gaffney mills and in addition similar apparatus in other cotton mills in the western district of South Carolina, thereby aiding and abetting the Gaffney Manufacturing Company and other persons in the infringement of the Smith patent.

The defendants answered challenging the validity of the patent and denying its infringement, and the Texas Company, as cross-complainant, charged Borne Scrymser Company with infringement of United States patent No. 1,401,376 of December 27, 1921, to Albert W. Thompson for improvement in processes and apparatus for conditioning fibers, under which patent the Texas Company claimed to hold, by assignment, the exclusive license for the cotton and rayon industries, with the right to sue in its own name for infringement. Shortly after the answer and cross-claim were filed, the Parks-Cramer Company, a Massachusetts corporation, filed a petition for leave to intervene in the cause as the owner of the legal title to the Thompson patent, and also of the equitable title, except in so far as it had granted the license described to the Texas Company. Borne Scrymser Company, the plaintiff in the original bill, moved the court, in accordance with Equity Rule 33 (28 USCA § 723), to strike the counterclaim from the defendant's answer on the ground that it did not appear that at the time of the filing of the bill of complaint, the Texas Company had any right, title, or interest to the Thompson patent, and that, in any event, the Texas Company was a mere licensee under the Thompson patent, and did not have such title thereto as would be necessary to sustain the counterclaim.

Affidavits and correspondence were filed

by the parties showing the circumstances under which the license of the Thompson Company was acquired, and after consideration, the district judge filed a decree whereby the motion to strike out the counterclaim was granted, and the motion for leave to intervene was denied. The judge found as a fact from the pleadings and proof that the Texas Company acquired its exclusive license at a date subsequent to the institution of the present suit, and he held as a conclusion of law that the Texas Company was therefore not entitled to set up the infringement of the Thompson patent by the plaintiff by way of counterclaim, and further that the limited interest of the Texas Company in the Thompson patent was not sufficient to support a suit by that company for infringement thereof. He also concluded that since the Texas Company had no standing in the court upon its counterclaim, the petition of Parks-Cramer Company for leave to intervene must necessarily be denied.

The facts in regard to the acquisition by the Texas Company of the Thompson patent were laid before the court without the production of witnesses, by affidavits and by correspondence taken from the files of the corporations named. The appellant suggests in its brief that it participated in this informal procedure under protest, but no exception was taken to the admission of the proofs by the district judge, no assignment of error was based thereon, and the evidence was incorporated in the record now before this court. Hence it is incumbent upon us to consider it; and we have reached the conclusion that the Texas Company acquired its interest in the Thompson patent not only after the institution of the pending suit, but after the Texas Company had notice that apparatus of its manufacture was charged by the Borne Scrymser Company to be an infringement of the Smith patent, and that thereupon the Texas Company acquired a license under the Thompson patent so that it might launch a counter offensive and make more difficult the prosecution of any charge of its infringement of the Smith patent which Borne Scrymser Company might undertake. It would be improper for us at this time to pass upon the merits of the respective claims of patent infringement, even if we were in possession of facts sufficient to enable us to do so, and we intimate no conclusions whatsoever in this respect; but in weighing the facts pertinent to the question now before us upon this appeal in equity, we find that a preponderance of the evidence justifies the

inference we have drawn as to the purposes for which the counterclaim was acquired and filed.

The district judge seems to have reached the same conclusion, for in addition to the finding of fact above mentioned as to the time when the Texas Company acquired its exclusive license, he stated in his formal opinion that the practice of setting up counterclaims was never intended to permit the defendant, after suit was brought, to buy up, for purposes of litigation and defense, doubtful or other claims against the plaintiff, for otherwise the buying up of claims against a plaintiff would be encouraged and sanctioned, and would result in the perversion instead of the promotion of justice.

Equity Rule 30 (28 USCA § 723), provides, in part: "The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set up any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final decree in the same suit on both the original and the cross-claims."

■■ The correct interpretation of this rule, as shown by many decisions, is that when the counterclaim arises out of the same transaction which is the subject-matter of the suit, the counterclaim must be filed by the defendant or be forever barred; whereas, if it does not arise out of the same transaction, defendant has the option to set it up against the plaintiff if it might be made the subject of an independent suit in equity against him. Since the subject-matter of the original bill of complaint relates to the infringement by the defendant of the Smith patent, while the subject-matter of the counterclaim relates to the infringement by the plaintiff of the Thompson patent, it is obvious that the same transaction is not involved, and that we are concerned only with the second clause of the rule. It is now settled, though it was long open to doubt, that a defendant in making a counterclaim is not confined to such a claim as could formerly be made the basis of a cross-bill under the older practice, but may file any counterclaim which might be the subject of an independent suit in equity. Wire Wheel Corporation v. Budd Wheel Co. (C. C. A.) 288 F. 308; Amer. Mills Co. v. American Surety Co., 260 U. S. 360, 364, 43 S. Ct. 149, 67 L. Ed. 306. It was pointed out in the last-mentioned case that the present equity rules were intended to simplify equity pleading and practice by limiting the pleadings to a statement of ultimate facts, and by uniting in one action as many issues as could be conveniently disposed of; and that Equity Rule 30 should be liberally construed to carry out its evident purpose of shortening litigation.

In accordance with this general statement of the purpose and effect of the rule, it has been held that one who sues in a federal court of equity to enjoin infringement of his patent thereby submits himself to the jurisdiction of that court, although a nonresident of the district, with respect to all issues in the case, including those pertaining to a counterclaim praying that he be restrained from infringing a patent of the defendant. Leman v. Krentler-Arnold Hinge Last Co., 284 U. S. 448, 52 S. Ct. 238, 76 L. Ed. 389; General Elec. Co. v. Marvel Rare Metals Co., 287 U. S. 430, 53 S. Ct. 202, 77 L. Ed. 408. It does not follow, however, that every right of action of a defendant against a plaintiff which complies with the literal terms of Equity Rule 30 may be made the basis of a counterclaim under that rule; for as was said by the court in Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co., 263 U. S. 629, 44 S. Ct. 220, 68 L. Ed. 480, in refusing, in an admiralty case, to apply the literal meaning of Admiralty Rule 50 (28 USCA § 723), the function of rules of court is to regulate the practice of the court and to facilitate the transactions of its business, and hence it is necessary, in order to ascertain the true meaning of a rule, to consider the operation and effect of a proposed interpretation. In other words, the court must determine, in each instance, whether the rule was intended to be applied to the proved facts, and refuse to apply it when it is clear that the result will be to defeat the purposes for which the rule was made. This view was taken by the court in Flowers v. Magor Car Corporation (D. C.) 26 F.(2d) 98, in which the defendant, in a suit for patent infringement, after the evidence had been taken and the case listed for trial, sought to amend its answer by inserting a counterclaim alleging infringement by the plaintiff of letters patent owned by defendant but subsequently issued. The court held in substance that while Equity Rule 30 does not expressly vest the judge with power to refuse permission to a defendant to file a counterclaim, such power must be presumed to exist, and may be exercised when the cause of action arises after the institution of the suit, and its consideration would cause undue

delay in determining the issue raised by the original complaint. The motion to amend the answer and file a counterclaim was therefore denied. See, also, United Kingdom Optical Co. v. American Optical Co. (D. C.) 2 F. Supp. 174, in which the conclusion was reached that since rule 30 does not expressly require that the counterclaim should date from before the filing of the bill, the court would receive and consider in a suit for patent infringement a counterclaim of the defendant based upon advertisements of the complainant conveying the impression that promises of the alleged infringer to protect his customers from infringement suits were not to be relied on.

In addition to these cases, we are especially urged to bear in mind the construction given by the English decisions to Order XIX, Rule 3, regulating the English practice, which suggested to the Supreme Court the adoption of rule 30. See Amer. Mills Co. v. American Surety Company, 260 U. S. 360, 364, 43 S. Ct. 149, 67 L. Ed. 306. The English rule provides that a defendant in an action may set off, or set up, by way of counterclaim against the claims of the plaintiff, any right or claim, whether sounding in damages or not, and discretion is expressly given to the court or judge to refuse permission to the defendant to avail himself of the rule if, in the opinion of the court or judge, the set-off or counterclaim cannot be conveniently disposed of in the pending action. In the exercise of the discretion thus given to the court, it has been held in a number of cases that a counterclaim is not barred merely because of its acquisition by the defendant, subsequent to the institution of the suit. In the cases in which such a holding was made, however, the circumstances were such as to show not only that no embarrassment or undue delay would be caused to the plaintiff, but that the filing of the counterclaim would put the court in a better position to do full justice between the parties. For instance, in Beddall v. Maitland, 17 Ch. Div. 174, the counterclaim was based upon injuries inflicted upon the defendant in a suit for breach of contract relating to the operation of a plant nursery occupied by him, through the ejectment of him from the premises by the plaintiff after the institution of the suit. See, also, Toke v. Andrews, 8 Q. B. D. 428. Compare Original Hartpool Colleries Co. v. Gibb, 5 Ch. Div. 713.

Such decisions, we believe, give no sanction or encouragement to the acquisition by the defendant of a claim against the plaintiff after the suit has been brought in order to hinder and delay the plaintiff, and to make more difficult the prosecution of his claim. Such a practice would tend to promote rather than to end the litigation, and it would have no relation to the recognized purpose of rule 30 to enable the parties in one suit to settle all the controversies between them. The rule should not be construed to forbid absolutely any counterclaim coming into existence, or acquired by the defendant after the original suit is brought; yet, on the other hand, a fair interpretation does not justify the filing of an after acquired counterclaim secured by the defendant for the purposes disclosed by the evidence in this case.

Some light is thrown on the matter by a consideration of the decisions relating to the practice of courts of equity prior to the adoption of the rule, or to state statutes permitting the filing of set-offs and counterclaims in various actions. We must not lose sight, of course, of the injunction of the Supreme Court to interpret the rule liberally so as to carry out its manifest purpose to facilitate the prompt disposition of equitable controversies between the litigants. Nevertheless the earlier practice, based on the experience of the courts over a long period of time, and announced in a long line of decisions, should not be entirely ignored in interpreting the purposes for which the rule was formed. The prior law is well summarized in 24 R. C. L. 833 as follows: "Ownership at the time suit is brought is of the very essence of set-off, and a set-off or counterclaim must not only be in existence, but in existence of the defendant interposing it, and at the time the action against him was commenced; he cannot purchase it afterwards, and then set it up. It is not sufficient that it was contracted for before but not transferred to the defendant till after suit brought. To permit a claim existing before but acquired after the action had been commenced to be interposed as a counterclaim would be a departure from the rule by which actions are to be determined according to the rights of the parties as they existed at the time they are commenced. It would also encourage barratry, a practice which received no favor from the courts. The law never intended to permit a defendant, after an action had been commenced against him, to buy up, for purposes of litigation and defense, doubtful or other claims against the plaintiff, and then interpose them to defeat in whole or in part a demand against which the defendant had no defense at the time the suit was brought. The statutes in regard to set-offs and counterclaims were intended as a shield to protect defend-

ants from being required to pay more than the amount actually owing by them over and above all counterclaims and set-offs existing at the time suit was brought, without requiring them to institute cross actions for the recovery of their cross demands. It was also intended to prevent multiplicity of suits, and to prevent, not encourage, litigation."

See Jump v. Leon, 192 Mass. 511, 78 N. E. 532, 116 Am. St. Rep. 265; Enter v. Quesse, 30 S. C. 126, 8 S. E. 796, 14 Am. St. Rep. 891; Argonia Oil & Gas Co. v. Wasson, 111 Kan. 124, 127, 206 P. 320; John Church Co. v. Clarke, 77 Hun, 467, 28 N. Y. S. 870; Smith & Co. v. Ewer, 22 Pa. 116, 60 Am. Dec. 73; Drennen v. Gilmore Bros., 132 Ala. 246, 31 So. 90, 90 Am. St. Rep. 902; Russell v. Koonce, 104 N. C. 237, 10 S. E. 256.

Since the counterclaim for the reasons given was properly dismissed by the district judge, it follows that the petition of Parks-Cramer Company for leave to intervene based upon the Thompson patent was necessarily denied; and that there is no need for us to decide whether the interest of the Texas Company as the holder of an exclusive license under the Thompson patent to use the invention in the cotton and rayon industry is sufficient under R. S. § 4898, 35 U. S. C. § 47 (35 USCA § 47), to enable it to maintain a suit for infringement.

Affirmed.