No. 23,681.

THE ARGONIA OIL & GAS COMPANY, *Appellee,* v. FRED WASSON, *Appellant.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Drilling Oil Wells—No Mutual Mistake—No Reformation.* The evidence is held to support a finding that a written contract was not subject to reformation on the theory of a mutual mistake.

2. SAME—*Drilling Oil Wells—No Ambiguity in Contract.* A written contract to the effect that the defendant agreed to drill three or more wells and the plaintiff was to employ him to drill them if the plaintiff concluded to have them drilled is held to give the plaintiff the privilege of stopping operations after one well had been drilled without liability to the defendant, being unambiguous in this respect.

3. SALES—*Written Contract May Not Be Varied by Prior Oral Agreement.* The effect of a written contract for the payment of the price of articles bought cannot be varied by showing a prior oral agreement that the payment was to be made only out of funds to be derived from a particular source.

4. SAME—*Articles Purchased Subject to Lien for Purchase Price—Taken Out of State.* Where the owner of articles subject to a lien for a part of the purchase price on which he is personally liable sells them, his liability is not affected by the fact that the creditor, without notice to him, allowed them to be taken out of the state.

5. SAME—*Unavailable Counterclaims.* A demand against the plaintiff, purchased by the defendant after he was sued, is not available as a counterclaim, at all events where no permission has been given by the court to plead facts occurring after the commencement of the action.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed April 8, 1922. Affirmed.

*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita, for the appellant.

*William Keith,* and *Charles A. Walsh, jr.,* both of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Argonia Oil and Gas Company sold an outfit of drilling tools to Fred Wasson for $6,000, a bill of sale being executed in which he agreed to pay that sum, the company retaining a lien on the property as security. This action was brought to recover a balance of something over $2,000 alleged to be due on that contract. The amended petition also alleged that the same parties had entered into a written contract by the terms of which the de-

fendant was to do some drilling for the plaintiff on a specified tract, one-half of his compensation therefor to be applied on the amount he owed for the tools, but that after one well had been drilled the plaintiff had decided not to drill any others on the tract referred to. The defendant filed an amended answer alleging that he had sold the property he had purchased to Gilbert Jackson under an arrangement by which the plaintiff released him from all liability and agreed to look wholly to Jackson for payment. This issue has not yet been tried. The answer also set out that the parties intended the drilling contract to provide distinctly that the plaintiff was to drill at least three wells thereunder, and that the defendant was not to be required to pay for the property purchased except from the proceeds of the drilling, but through mutual mistake these matters were not clearly stated, the language used in this regard being ambiguous, on which account a reformation was asked. The court heard the case upon this issue, refused to reform the contract, and held that it was not ambiguous. The appeal is taken from these rulings and also from the striking of matter from the answer and the sustaining of a demurrer to a cross petition setting out a counterclaim.

1. The court found that the contract stated the real agreement between the parties. The defendant insists that the contrary was shown by the testimony of the plaintiff's president, who represented it in the transaction. He testified that the plaintiff had a lease from one Safford on the land already referred to, one of the terms of which was that it was to drill three wells thereon, but after oil was struck this was changed; and that at the time the contract was made with the defendant the company expected to drill three more wells—that the common talk was that there would be three additional wells drilled, but there was nothing certain about it;·that the witness told the defendant they would make a contract and he could have a chance to pay for the tools out of the drilling of the wells. The existence of these facts is not inconsistent with the reservation by the plaintiff in its written contract with the defendant of a right to refrain from drilling more than one well. The court found specifically that the defendant read the contract before signing and signed it with full knowledge of all its contents. The question of mutual mistake was one of fact, on which there was a conflict in the evidence, and the decision of the trial court must stand.

2. We conclude also that the trial court was right in holding that

the contract was unambiguous and gave the plaintiff the privilege of determining whether it should drill more than one well. Upon this phase of the matter there is no occasion to do more than quote the instrument bearing thereon, as the question must be determined from a consideration of its precise language, and further discussion could throw little light upon its meaning:

"Said second party [the defendant] hereby agrees to drill three or more wells for oil at any place on [describing the tract] that the said first party [the plaintiff] may designate, . . . said first party covenants and agrees to employ the party of the second part to drill three or more wells on the premises above mentioned, provided he well and faithfully performs the terms and conditions of this agreement, and, provided further that said first party concludes to and does actually drill said wells (meaning and hereby intending to provide for said second party's drilling all the wells to be hereafter drilled by said first party on the premises aforesaid, under the same terms and conditions herein provided for, so long as the company desires to drill thereon, and as long as said second party faithfully performs this contract), . . ."

3. The matter stricken from the answer consisted largely of the allegations that the contract was ambiguous and did not express the real agreement of the parties. The court having held as a matter of law that the contract was not ambiguous, and having found as a matter of fact that it did express the agreement made, the allegations on these subjects served no further practical purpose and their elimination could not be prejudicial. The defendant argues that the oral agreement alleged by him, that he was not to be liable for the price of the tools except from the proceeds of the drilling, is not in conflict with the terms of the written contracts. We do not take that view. The bill of sale included an express promise to pay, and the language of the drilling contract regarding the number of wells to be drilled has already been quoted and interpreted. The unqualified written provision to pay the agreed price cannot by evidence of prior oral negotiations be converted into a promise to pay only from a particular source.

4. The other allegations stricken out were to the effect that Ramsey and Flickinger, to whom Jackson (without the knowledge of the defendant) had sold the tools, took them out of the state, and the plaintiff knew beforehand that the removal was to be made and could have prevented it, but took no steps to do so, and gave the defendant no notice regarding it. The fact that the plaintiff allowed the property on which he had a lien to be taken from the

state would not affect the defendant's personal liability, and the striking out of the allegations in that regard was not error.

5. The facts pleaded as a counterclaim, to which a demurrer was sustained, may be thus summarized: When the defendant sold the tools to Jackson he also assigned to Jackson his rights under the drilling contract, and Jackson assigned these rights to Ramsey and Flickinger when he sold them the tools. Ramsey and Flickinger completed the first well. The plaintiff notified them that it would drill no other wells, after having stated to them that it intended to and would drill at least two more. By this refusal they were damaged in the sum of $7,500. Some eighteen months after this suit was begun Ramsey and Flickinger assigned to the defendant their claim for such damages, which claim the defendant asserted as a cross demand.

The plaintiff contends that a demand in favor of a defendant in order to be available as a counterclaim must have existed when the action was begun. An apparent diversity of opinion on that subject arises from statutory differences. The code provisions on the subject are classified in Pomeroy's Remedies, § 581. Many codes, perhaps most of them, contain substantially this section, adopted from that of New York:

"The counterclaim mentioned in the last section, must be one existing in favor of a defendant, and against a plaintiff between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"1. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action;

"2. In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action." (Pomeroy's Remedies, § 583.)

Under such a statute two kinds of counterclaims are recognized. Because the express requirement of existence at the commencement of the action is made with respect to the second and not with respect to the first it is held that counterclaims of the first kind—those arising out of the same transaction or connected with the subject of the action—may be used in an action begun before they arise. (23 Standard Proc. 704-707, note 42.) Our code, however, (§ 98) designates as counterclaims only those of the first kind as above classified, and calls those of the second kind (now amended to include torts as well as contracts) set-offs (§ 100), nothing being said

in either case with regard to the cross demand having accrued before the commencement of the action. The reason for the rule referred to has no application under our statute and therefore the rule itself fails here, and counterclaims originating after the commencement of the action have been disallowed by this court. (*Loan Co: v. Hutto,* 48 Kan. 166, 29 Pac. 558; *National Bank v. Hasie,* 57 Kan. 754, 48 Pac. 22.) In order for a cross demand to have existed at the time an action was begun it is not enough that a third person should then have had a cause of action which he subsequently assigned to the defendant. The assignment constitutes an essential part of the cross demand. By another provision of the code, however, facts occurring after the action is brought can be set out only in a supplemental pleading, filed by leave of the court. (Gen. Stat. 1915, § 7037; *Robertson v. Howard,* 83 Kan. 453, 112 Pac. 162.) Moreover the usual view is that a claim against a plaintiff purchased by the defendant after he has been sued cannot be used as a cross demand in that action. (24 R. C. L. 833; 34 Cyc. 755-756; 23 Standard Proc. 723; *Reynolds v. Thomas,* 28 Kan. 578.)

The judgment is affirmed.