No. 40,977

EVERETT CHRISTENSON and CLARA M. CHRISTENSON, *Appellees,* v. TOM O. AKIN and DOROTHY G. AKIN, his wife, *Appellants.*

(326 P. 2d 313)

June 7, 1958.    Opinion filed

*Forrest A. Jackson,* of Lawrence, argued the cause, and *William L. Lemesany,* of Lawrence, was with him on the briefs for the appellants.

*George K. Melvin,* of Lawrence, argued the cause, and *Charles A. Springer,* of Lawrence, was with him on the brief for the appellees.

The opinion of the court was delivered by

JACKSON, J.: In March, 1950, Christenson sold to Akin for the gross price of $30,000 "The Central L. & P. Gas Agency and good will, agency being described as equiptment only . . ." The quoted part of the preceding sentence was taken, together with misspelling, from a so-called written contract entered into between the parties, together with their respective wives, on March 23, 1950. Akin took possession of the business and made certain payments under the contract.

On June 8, 1956, the Christensons brought suit against the Akins to collect the sum of $5,900 together with interest and to foreclose the above-mentioned contract as a chattel mortgage.

At this point, we are constrained to observe that having been informed that the above-mentioned contract was drawn for the par-

ties by a banker, it would seem that the parties would have found it much more economical to have engaged their present respective counsel at the time the contract of sale of this $30,000 worth of property was being made rather than waiting until difficulties as to their rights under the contract had arisen. Unauthorized practice of law often harms the public.

To return to the lawsuit, defendants Akin answered and also filed several cross claims. The pleadings were amended several times, and the trial from which this appeal is taken involved only one of the counterclaims of the defendants in which they sought to enjoin plaintiffs from competing with defendants in violation of their alleged covenants in the above mentioned contract.

The only part of the contract which is pertinent to the issues at the present time is as follows:

"WITNESSETH, That said parties of the first part has this day agreed to sell to the said parties of the second part, on the conditions and for the consideration hereinafter mentioned, The Central L. & P. Gas agency and good will, agency being described as equiptment only, said equiptment will be itimized under separate sheet and become a part of this agreement. The Agency territory will be under a separate plat and become a part of this agreement. The good will excludes the first parties from entering into compitition in said territory as maped or platted. Temporary desk space will be granted free by first parties to the second parties."

The within matter was tried to the court without a jury, and at the close of the evidence of defendants upon their counterclaim, plaintiffs entered a demurrer to the evidence. They also announced that they would offer no evidence upon their own behalf and moved the court for judgment. After taking the matter under advisement, the trial court filed its memorandum decision. The findings and conclusions of the learned trial judge therein were later made a part of the journal entry and will be quoted, since they will serve both to elucidate the issues between the parties, the evidence thereon, and the rulings of the court:

"Now on this 22nd day of July, 1957, the parties appearing as before, this cause comes on for determination by the court of defendants' right to relief under the third cause of action pled in their cross-petition and amendments thereto. Thereupon, the court makes and files in this cause the following findings of facts, from the entire record insofar as it pertains to the injunction issue:

"1. On and prior to March 23, 1950, plaintiffs were operating a liquified petroleum business under the firm name, Central L. P. Gas Company, said business being conducted in all or parts of all of the following named Kansas counties: Douglas, Wyandotte, Leavenworth, Atchison, Jefferson, Shawnee, Pottawatomie, Osage, Franklin, and Johnson.

"2. Liquified petroleum gas, commonly referred to as L. P. Gas, is used primarily as a substitute for natural gas in areas where natural gas is not available. The State has seen fit to enact certain statutes relative to liquified petroleum gas containers, ownership thereof, method of designation of such owner, regulations concerning the filling and re-filling of such containers, and providing penalties for the violation of such laws. (G. S. 1955 Supp., 55-1101 et seq.)

"3. On and prior to March 23, 1950, plaintiffs operated their L. P. Gas business from a business building at 400 East 23rd Street in Lawrence, Kansas and from a location in Lansing, Kansas.

"4. On March 23, 1950 plaintiffs and defendants entered into an agreement by the terms of which plaintiffs agreed to sell to defendants 'The Central L. & P. Gas Agency and good will, agency being described as equipment only, said equipment will be itimized under separate sheet and become a part of this agreement. The Agency territory will be under a separate plat and become a part of this agreement. The good will excludes the first parties (plaintiffs herein) from entering into compition in said territory as maped or platted. Temporary desk space will be granted free by first parties (plaintiffs herein) to the second parties. (Defendants herein).' The agreement further provides that the whole consideration for such agency and Good Will is the sum of $30,000, $1,000 payable on date of contract, $6,000 within 60 days, and balance of $23,0000 to be paid by a 4% mortgage note, said note to be payable at the rate of $300 plus interest on the unpaid balance each 30 days from the date of said note until fully paid. The agreement was prepared on a printed form used for conditional sales of real estate and contained a type statement near the end of the form that 'It is understood and agreed that this is not a real estate agreement but an agreement on equipment and good will of the Central L. & P. Gas Company as defined, of Lawrence, Kansas and now operated by Evertt Christenson.' Pursuant to the terms of the agreement an equipment list was prepared and signed as was an instrument bearing the caption 'Designated territory.'

"5. The instrument styled 'Designated territory' consists of a sheet of paper upon which is drawn a solid horizontal line labelled 'U. S. 40', at the west end of which line is a dot, labelled 'Tongonoxie', from which dot is drawn a solid curved line upward and to the left where it connects with a solid vertically drawn line, which goes up toward the top of the paper for about 1-¾ inches and is labelled Leavenworth County Line. At the upper end of this solid vertical line are two sets of dotted lines, one going horizontally to the left thereof, the other going up vertically therefrom, the 'horizontal dotted line being labelled 'no bounds'. Just to the right of the solid horizontal line labelled 'U. S. 40' is a dotted line going to the right to the edge of the page labelled 'Wyandotte Co. No. bounds'. Extending vertically downward for about 4-¼ inches from the end of the dotted line labelled 'Wyandotte Co. No. bounds' is another dotted line labelled 'No bounds'. At the bottom extremity of this dotted line is another dotted line which goes to the left off of the page and is labelled 'No bounds'.

"6. Defendant, Tom O. Akin, was permitted to testify over objection, that the territory of plaintiffs' Lawrence L. P. Gas business on March 23, 1957,

was generally contained within bounds beginning at the Leavenworth-Jefferson county line, thence North to Winchester, thence North from Winchester 4 or 5 miles, thence West-Southwest to Topeka and on to Burlingame, thence Easterly through Homewood, thence Northerly to Ottawa, thence Northeasterly into Johnson County to a point 4 or 5 miles East of Bonner Springs, thence Northwesterly to Bonner Springs, thence to a point of beginning on U. S. 40 highway.

"7. On April 29, 1950, defendants executed the chattel mortgage contemplated by the March 23, 1950 Agreement and on May 1, 1950 took possession and commenced operation of the business. At first, defendants operated from plaintiff's building on East 23rd Street, then from a warehouse a few hundred feet to the west, and then in 1952 moved to their present location near the junction of W. 23rd Street and Highway 59.

"8. In the fall of 1950 plaintiffs began filling trailer bottles with L. P. gas in Lawrence. From that time on plaintiffs' business of selling L. P. gas in the Lawrence area continued to grow until in 1954 and 1955 plaintiffs were selling and delivering L. P. Gas in Douglas, Jefferson, Leavenworth, Johnson, Shawnee, Wyandotte, Atchison and Franklin counties. During 1954, 1955 and up to the present time, plaintiffs have sold and delivered L. P. gas in the area just mentioned from the former location of the Central L. P. Gas Co. on East 23rd Street, and have advertised their business in the papers and on the radio.

"9. Defendants' first complaint to plaintiffs about selling L. P. Gas around Lawrence resulted in plaintiffs' temporary relinquishment of the business complained about to defendants. Defendants last complained to plaintiffs about competing in August, 1954. Defendants first learned that plaintiffs were competing in the fall of 1951.

"10. Defendants made regular $300 payments with interest up until December 1, 1955 at which time the balance due on the chattel note was $5900. Defendants have since made no further payment to plaintiffs nor has tender of any payment since been made. No court action was started by defendants to enforce whatever rights they had against plaintiffs' competing until plaintiffs filed this action on June 8, 1956 for the balance due on the mortgage note.

"The court also makes and files the following conclusions of law:

"1. An agreement by the seller, ancillary to the sale of a business, not to compete with the buyer thereof need not prescribe arbitrary limitations as to time and as to territory in order to be valid, provided the limitations as to time and as to territory which are fixed are reasonable in light of all the facts and circumstances of the particular case. (*Miller v. Cleveland,* 87 K. 549; 36 Am. Jur. 544, Sec. 65; 45 ALR 2d 77; 46 ALR 2d 119, at p. 205) To meet the test of reasonableness, such limitations must (1) afford no more than a fair and just protection to the interests of the buyer; (2) must not be unduly oppressive as to the seller; and (3) must not be injurious to the public interest. (See 46 ALR 2d 204)

"2. The instrument styled 'designated territory' when construed in light of the contract and the evidence apparently is an attempt by plaintiffs and defendants to divide the territory then serviced by plaintiffs into the Lansing

and Lawrence areas, plaintiffs to retain and operate in Lansing and defendants to buy and operate in the Lawrence area, plaintiffs agreeing not to compete with defendants in the Lawrence area. However, the only fixed boundary so provided is on part of the south line of the Lansing area and on part of the North side of the Lawrence area. This boundary is that portion of highway 40 East from Tongonoxie to an indefinite point probably somewhere in eastern Leavenworth County or western Wyandotte County; then northwesterly from Tongonoxie along Kansas Highway 16 to the Leavenworth county line and then North on said county line to a wholly unidentified terminus. At the ends of the boundary just mentioned no bounds are fixed. Except as limited by the so-called boundary just mentioned, the agreement of plaintiffs not to compete is unlimited both as to time and as to territory. In view of the area in which plaintiffs had been operating prior to the sale and in view of the nature of the business, plaintiffs' agreement not to compete is unreasonable as to territory in that it covers a wider area than is necessary for the protection of the good will which defendants purchased from plaintiffs. (46 ALR 2d 204) (The evidence relative to where plaintiffs were operating prior to the sale in question was received in order to determine whether or not the areas in which plaintiffs agreed not to compete was reasonably necessary to the protection of defendants in the business which they had purchased. It was not received to reform the agreement. Any right to reformation, (which defendants say is neither necessary nor desired) would be barred.) (*Siegel v. Hackler, Adm.*, 181 K. 316.)

"3. Defendants permitted plaintiffs to change their position substantially over a period of approximately five years prior to the filing of this action without making a move to enjoin such activity. Plaintiffs are providing L. P. Gas in virtually every county in which defendants operate and have been doing so on an increasing scale since the fall of 1951 with defendants' full knowledge and acquiescence. Many customers throughout the area in which defendants now operate, rely upon plaintiffs to service their need for bottled or L. P. Gas. The Court takes judical notice of the fact that in rural and suburban areas where natural gas is not available as a fuel for cooking, heating and refrigeration, L. P. Gas is often used for such purposes.

"4. What defendants want the Court to do is to reduce and define the territory in which plaintiffs shall not be permitted to compete so that the same is reasonable under the circumstances and then enjoin plaintiffs from competing with defendants therein. This the Court could and probably would have done had timely application been made. (See *Foltz v. Struxness*, 168 K. 714; *Wright v. Scotton*, (Del.) 31 ALR 1162; *McGill v. National Bank of Topeka*, 147 K. 605; *N. P. Dodge Corp. v. Calderwood*, 151 K. 978). Under all the facts and circumstances shown and disclosed by the entire record, I think it must be held that defendants' claim for an injunction against plaintiffs must be denied on account of their laches in asserting it, and for the further reason that to enjoin plaintiffs from doing business in the area in which defendants are now operating would be injurious to the public in that it would compel those customers who have been served by plaintiffs for several years to make other arrangements for such service. (26 Am. Jur. 257, Secs. 61-68.)

"5. Defendants are delinquent since Dec. 1, 1955 in their installments on the contract which they now request equity to adjust and enforce. One who seeks equity must do equity.

"6. From what has been said, I think it is clear that defendants' claim for damages on account of plaintiffs' competition likewise fails. (*Merager v. Trunbull*, (Wash.) 127 ALR 1142 at 1148.)

"WHEREFORE, the court orders judgment as of this day in conformity with the above and foregoing conclusions of fact and law.

"Now upon this 25th day of July, 1957, the same being a regular May, 1957, term day of the above entitled court, plaintiffs being present by their attorney, Charles A. Springer and defendants being present by their attorney, Forrest A. Jackson, the court on its own motion sets aside the judgment rendered herein on July 22, 1957, and states as follows:

" 'The Court believes that by their motion for judgment the plaintiffs in effect waived their demurrer to the evidence and submitted the case on the merits insofar as the matter of injunctive relief is concerned. *The record being as it is, in light of the memorandum decision, the Court is further of the opinion that the plaintiffs motion for judgment also reached that part of defendants' third cause of action which has to do with damages. Since defendants' right to an injunction is denied, then their right to damages must also fail. This means that defendants' right either to injunctive relief or to damages as prayed for in their third cause of action must be denied.*

" 'Judgment is therefore entered on this 25th day of July, 1957, on the merits, in favor of plaintiffs and against defendants on the third cause of action contained in defendants' counterclaim.

" 'The trial of the Fourth cause of action of defendants' counterclaim heretofore set for trial on this date is passed until further order by agreement.' " (Italics above supplied.)

The defendants have duly appealed from the above decision of the trial court.

We agree with the trial court that defendants are barred from the right of obtaining the affirmative relief of an injunction under the facts of this case. The rights of the defendants to object to the competitive actions of the plaintiffs are based upon a written contract. The evidence showed and the trial court found that the first violation of those rights occurred in the fall of 1950. The original petition of the plaintiffs was filed in this action on June 8, 1956. Therefore, more than five years had elapsed at the time of the filing of this suit since plaintiffs began to violate their alleged covenants under the written contract. Any affirmative relief would be barred to defendants by the five year statute of limitations in G. S. 1949, 60-306, *First*, before that date. The general rule is that a cross claim of any nature is barred as to affirmative relief, if such cross claim be barred by the statute of limitations at the time of the

filing of plaintiff's action. (cf. *Reynolds v. Thomas*, 28 Kan. 810; *Oil & Gas Co. v. Wasson*, 111 Kan. 124, 206 Pac. 320; 34 Am. Jur., *Limitations of Actions*, § 65, p. 60; 54 C. J. S. *Limitations of Actions*, § 285, p. 342.)

We note that the statute of limitations was pleaded in the plaintiffs' answer to the counterclaim of the defendant. Furthermore, as to the argument of defendants that the doctrine of laches must be pleaded, the trial judge in his memorandum decision pertinently directed attention to the case of *Schlemeyer v. Mellencamp*, 159 Kan. 544, p. 549, 156 P. 2d 879, showing that the defense may be raised by demurrer.

It would appear from the record that this hearing of the counterclaim as tried in the district court, and from which this appeal was taken actually dealt only with the right of defendants to injunctive relief. But as shown from conclusion of law No. 6, *supra*, and from the part of the trial court's decision which we have italicized, it appears that the trial court determined that defendants' right of damages for past forbidden competition was barred as well as injunctive relief. It would seem that this is not entirely correct.

Nowhere in this record is mention made of the provisions of G. S. 1949, 60-715. As that statute has been construed in the cases of *Bank v. Elliott*, 97 Kan. 64, 154 Pac. 255; *Muckenthaler v. Noller*, 104 Kan. 551, 180 Pac. 453; *McCarthy v. Sink*, 152 Kan. 659, 107 P. 2d 790; and *Collins v. Richardson*, 168 Kan. 203, 212 P. 2d 302, it would seem pertinent to this case. The counterclaim here being considered grew out of the same contract and transaction which is the basis of plaintiffs' cause of action in their petition. Although defendants may be barred from affirmative relief because of limitations, they would seem to have a right to use their counterclaim as a matter of pure defense to reduce any judgment received by plaintiffs herein.

In conclusion of law No. 4, *supra*, the trial court concludes that the contract against competition herein, if it had not been for laches, could have been given a reasonable meaning. In view of the provisions of section 60-715, *supra*, we feel that the trial court should give the contract that reasonable construction, and allow the parties a further hearing upon the question of past damages suffered by defendants because of the acts of plaintiffs in violation of the contract which they are now suing on. The defendants will not be

permitted to recover an affirmative judgment of more than shall be found to be due plaintiffs on the indebtedness remaining due, but should be allowed to reduce the judgment of plaintiff by the amount of any damage which it may be found defendants have suffered herein.

In accord with the above, the trial court's conclusion of law No. 6, *supra*, and the italicized portion of the decision should be set aside. The decision as so modified should be affirmed, and the case returned to the district court for further proceedings in accord with the views expressed herein.

It is so ordered.

Opinion

filed June 7, 1958.